B-W ACCEPTANCE CORPORATION, Plaintiff, v. JOHN K. SPENCER, JR., and Wife, ANN LANIER SPENCER, Defendants and NORGE SALES CORPORATION, FORREST SAM ROGERS, SOUTHEAST MACHINERY COMPANY and BORG-WARNER CORPORATION, Additional Defendants.

(Filed 26 August, 1966.)

**1. Actions § 10—**

An action is commenced as to each defendant when summons is issued against him. G.S. 1-14.

**2. Limitation of Actions § 4—**

An action, or a cross-action against an additional defendant, on the ground of fraud is barred in three years after the right of action accrues, and the right of action accrues and the statute begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence. G.S. 1-52(9).

**3. Sales § 14—**

A right of action for damages for breach of warranty is barred three years after the right of action accrues. G.S. 1-15, G.S. 1-46, G.S. 1-52(1).

**4. Limitation of Action § 4—**

Generally, a right of action accrues to an injured party so as to start the running of the statute of limitations when he is at liberty to sue, being at the time under no disability, and once the statute of limitations begins to run, it continues until stopped by appropriate judicial process.

**5. Limitation of Actions § 17—**

Where the applicable statute of limitations is pleaded, the burden is upon claimants to show that their action, or cross-action, was instituted within the time prescribed by the applicable statute.

**6. Corporations § 1—**

Ordinarily, a corporation and its subsidiaries maintain their separate legal entities notwithstanding that the parent corporation owns all of the capital stock of the subsidiaries and the corporations have identical membership on their boards of directors; in order to establish responsibility on the part of the parent corporation for the acts of its subsidiaries there must be additional circumstances showing fraud, actual or constructive, or agency so that the subsidiary is merely an instrumentality of the parent corporation.

**7. Same—**

Allegations that subsidiary corporations were merely agents and *alter egoes* of the parent corporation, without allegation of facts tending to show that the parent corporation had complete dominion of the finances, policies, and practices in respect to the transaction in question, constitute mere conclusions and cannot justify disregard of the separate corporate identities.

**8. Limitation of Actions § 12—**

Plaintiff corporation, the endorsee of a note, instituted action against defendants on the note executed by defendants for the purchase price of machinery. Defendants filed a counterclaim against plaintiff and a cross-action against the manufacturer and the parent corporation of the manufacturer, who were made additional parties, alleging fraud and breach of warranty in the sale of the machinery. *Held:* In the absence of allegation sufficient to warrant the disregard of the separate corporate entities, defendants cannot maintain that the institution of the action by plaintiff corporation tolled the running of the statute of limitations on the cross-action against the manufacturer and its parent corporation.

**9. Appearance § 1—**

The appearance of a party under order of court for the purpose of a pretrial examination does not amount to a waiver of service of summons, since the appearance is not voluntary. G.S. 1-103.

**10. Limitation of Actions § 18—   When facts alleged by claimant disclose that right of action was barred by statute duly pleaded, dismissal is proper.**

Where the allegations of the cross-actions of the original defendants against the additional defendants for fraud and breach of warranty disclose on the face of the pleading that the acts constituting the basis of the cross-actions were known to the original defendants more than three years prior to the filing of the cross-actions and more than three years prior to the date when one of the additional defendants, without being served with proper process, filed a reply, and more than three years prior to the service of irregular process upon the other additional defendant, and the additional defendants plead the three-year statute of limitations as a bar to the cross-actions, judgment dismissing the cross-actions as to the additional defendants is without error.

**11. Pleadings § 30—**

Judgment on the pleadings is properly entered on motion when the facts shown and admitted by the pleadings entitle movants to judgment as a matter of law, there being no controverted issues of facts sufficient to constitute a cause of action or a defense in favor of the pleader.

**12. Bills and Notes § 17—**

Where, in an action on a note by the holder, the answer admits the execution of the note by defendants and the balance due thereon for the purchase price of machinery, and alleges as a counterclaim and cross-action against the holder and the manufacturer and the parent corporation of the manufacturer, joined as additional parties, fraud and breach of warranty in the sale of the machinery, but fails to allege that plaintiff holder knew anything about the alleged false warranties and false representations or participated in them in any way, the counterclaim is fatally deficient in substance, and the granting of judgment on the pleadings in favor of the holder is correct.

**13. Estoppel § 6—**

The facts constituting the basis of an equitable estoppel must be pleaded.

**14. Limitation of Actions § 15—**

A defendant asserting that plaintiff and the additional parties defendant were estopped to plead the statute of limitations against his counterclaim and cross-action must allege facts constituting a basis for the estoppel, and additional facts set forth in the brief as ground for the estoppel cannot be considered.

**15. Pleadings § 30—**

On motion for judgment on the pleadings, the pleadings alone will be considered, and additional facts set forth in the brief will not be considered in passing upon the correctness of the granting of judgment on the pleadings.

PLESS, J., took no part in the consideration or decision of this case.

APPEAL by original defendants from *Houk, J.,* 15 February 1965, Schedule "A" Session of MECKLENBURG. Docketed and argued as Case No. 285, Fall Term, 1965, and docketed as Case No. 284, Spring Term 1966.

Civil action, commenced by the issuance of summons on 27 November 1963 by the clerk of the Superior Court of Mecklenburg County, and service on the original defendants on 4 December 1963, to recover from the original defendants the sum of $12,618.08, the balance due and unpaid on a negotiable promissory note dated 27 January 1961 in the sum of $21,558.60, executed and delivered by the original defendants to Southeast Machinery Company and payable to it or its order, as the purchase price of 8 New KM-G-1 Norge Dry Cleaners and 20 Norge Washers. The note was secured by a conditional sales agreement covering the dry cleaners and

washers and delivered by the original defendants to Southeast Machinery Company for the purpose of securing the payment of their note. Southeast Machinery Company on or about 3 March 1961 for valuable consideration assigned by endorsement the note and conditional sales agreement to plaintiff. Plaintiff alleges in substance in its complaint that it purchased the note before maturity for value and without notice of any infirmity therein, and further that the original defendants have made payments on said note and that there is due and payable on said note the sum of $12,618.08 with interest.

Original defendants were granted an extension of time until 23 January 1964 within which to file answer. On 22 January 1964 the original male defendant petitioned the court for an order directing the president, vice-president, and treasurer of plaintiff to appear before a commissioner to be appointed by the court to be examined by defendants for the purpose of obtaining necessary information to file their answer, and that they be allowed leave to inspect the minute books of plaintiff and any paper writings containing any written contractual arrangements between plaintiff and Forrest Sam Rogers. On 30 January 1964 the original male defendant petitioned the court that Norge Sales Corporation, hereafter called Norge, Southeast Machinery Company, hereafter called Southeast, and Forrest Sam Rogers, hereafter called Rogers, be made additional defendants, and that the president, vice-president, and treasurer of both corporations be directed to appear before a commissioner to be appointed by the court to be examined by defendants for the purpose of obtaining necessary information to file their answer and "cross-complaints against Norge, Southeast, and Rogers," and that they be allowed leave to inspect the minute books, stock books and financial records of these two corporations to determine the capitalization of Norge and Southeast, and to inspect any paper writings containing any contractual arrangements between Norge, Southeast, and plaintiff. On 5 March 1964 the clerk of the Superior Court of Mecklenburg County entered an order making Norge, Southeast, and Rogers additional defendants in this action, and granting in substance the requests contained in the two above petitions filed by the original male defendant.

On 7 October 1964, Pless, J., presiding, entered an order in substance as follows: If defendants have not examined the parties they are entitled to examine by the order of the clerk of the Superior Court by 15 November 1964, then the defendants shall be required within 20 days after 15 November 1964 to file answer, and if the defendants do not answer within that time, plaintiff shall be entitled to a judgment by default final.

On 2 November 1964, Huskins, J., presiding, by consent of the parties granted the original defendants until 22 November 1964 to conclude the examinations heretofore ordered in this case.

On 25 January 1965 plaintiff moved for a judgment by default final on the ground that the original defendants had filed no answer.

On 1 February 1965 the original defendants filed an answer and counterclaim against Borg-Warner Corporation, hereafter called Borg, Norge, Southeast, Rogers, and plaintiff for the recovery ·of damages from them, jointly and severally, in the sum of $50,000. In their answer they admit executing a note in the amount of $21,558.60 payable to Southeast, that Southeast endorsed said note to plaintiff, that they have made payments on this note, but they deny that they owe on this note $12,618.08. In their answer they deny all other crucial allegations of the complaint. In their counterclaim they allege in brief summary: Norge manufactured the dry cleaners and washers sold by Rogers to them. Rogers and Southeast held themselves out to them as agents and representatives of Norge, and were permitted by Norge to do so. Southeast had a capitalization of $1,000, had sales of over one million dollars annually, and was practically owned by Rogers, who was its president. Rogers and Southeast by means of advertisements of Norge and by false warranties and false representations — which are alleged in great detail in the counterclaim — induced them to purchase the dry cleaners and washers, and to execute the note and conditional sales contract plaintiff sues on in this action. The dry cleaners were installed by Southeast under the direct supervision of factory representatives of Norge. During the first ten months following the delivery and installation of the dry cleaners, and especially during the first three months all 8 dry cleaners failed to function properly and required extensive repairs, and numerous patent and latent defects in them were discovered, and replacement parts had to be purchased by defendants. Their spare parts account with Southeast to purchase replacements for the defective parts between February 1961 and December 1961 amounted to $2,487.24. Seventeen of the motors of the 20 washing machines burned out within the warranty period and Norge refused to make them good. Defendants were required to replace them at a cost of $24 each plus labor in order to operate them. The discharge pumps did not work satisfactorily and the porcelain interiors of the washing machines were unsatisfactory and had to be replaced at great trouble and expense to defendants. On many occasions, on account of the faulty design and construction of the washing machines, defendants were burdened with large puddles of water on the floor. The washing machines were defective and did not comply with the warranties and representations.

The defendants notified Norge and Southeast that the machines were defective and did not comply with their warranties and representations, and that defendants' losses and expenses in attempting to use the machines were prohibitive, and that they were losing most of their business and were in danger of losing all of their business, because of their inability to keep the machines operating properly. That Rogers guaranteed defendants that they would gross at least $1,400 per month in dry cleaning sales alone at their laundry, and gave his promise in writing that if defendants did not gross as much as $1,400 per month, he would make up the difference. Defendants allege further that plaintiff is a wholly owned subsidiary corporation of Borg; that Norge is also a wholly owned subsidiary of Borg; that plaintiff is an *alter ego* of Borg, and that Norge is an *alter ego* of Borg; that Borg has dominion and control over Norge and plaintiff; that the three corporations are directly controlled by identical boards of directors, and that the individuals who served on the board of directors of Borg also served as officers of Norge and plaintiff; that the various corporate structures of these three corporations were formed for the purpose of insulating Borg from liability of its subsidiaries, and for the purpose of insulating one subsidiary from the liabilities of another. They move that Borg be made a party defendant and pray (1) that plaintiff have and recover nothing of defendants, and if plaintiff is entitled to any amount that such amount be set off against the claims of the original defendants; and (2) that they recover from Borg, and its subsidiaries Norge, plaintiff, Southeast, and Rogers, jointly and severally, the sum of $50,000 as damages.

On 1 February 1965 the clerk of the Superior Court of Mecklenburg County made Borg an additional party defendant in this action.

Norge filed a reply to the further answer and counterclaim of the original defendants. In its reply it admits that it and plaintiff are wholly owned subsidiaries of Borg, and denies all the other crucial allegations of the further answer and counterclaim of the original defendants. In its reply to the original defendants' counterclaim it alleges that more than three years have elapsed since defendants' cause of action on its counterclaim has accrued, and it pleads this lapse of time in bar of any recovery by the original defendants on their counterclaim against it. Borg and plaintiff filed separate replies to defendants' answer and counterclaim against them in the identical language of the reply of Norge. The same attorney represents plaintiff, Norge, and Borg.

Plaintiff, Norge, and Borg each made a separate motion, identical in terms, that the original defendants' counterclaim against

each one of them for damages be dismissed for the reason that it is shown affirmatively on the face of original defendants' counterclaim against them for damages that more than three years have elapsed since their cause of action alleged in their counterclaim against them has accrued, and that recovery on their counterclaim against them is now barred by the three-year statute of limitations. Southeast and Rogers filed no reply. There is nothing in the record to show service of process on them. Defendants' brief states that Rogers is insolvent. The court entered a judgment that plaintiff's motion for judgment on the pleadings be allowed, for that the original defendants' counterclaim against it for damages is barred by the three-year statute of limitations. The court entered a separate judgment in behalf of Borg identical in language to the judgment entered in behalf of plaintiff. The court entered a separate judgment in behalf of Norge identical in language to the judgment entered in behalf of plaintiff. From these three separate judgments, the original defendants appeal.

*H. Glenn Pettyjohn for original defendants Spencer, appellants.*
*Louis A. Bledsoe, Jr., and Joseph A. Moretz for plaintiff and additional defendants Norge Sales Corporation and Borg-Warner Corporation, appellees.*

PARKER, C.J.  G.S. 1-14 provides "an action is commenced as to each defendant when the summons is issued against him." The period prescribed for the commencement of the counterclaim for relief on the ground of fraud is three years after the cause of action has accrued. The action "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." G.S. 1-15; G.S. 1-46; G.S. 1-52(9). The authorities are to the effect that in an action grounded on fraud, the statute of limitations begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence. *Brooks v. Construction Co.,* 253 N.C. 214, 116 S.E. 2d 454; *Wimberly v. Furniture Stores,* 216 N.C. 732, 6 S.E. 2d 512. The period prescribed for the commencement of the counterclaim, after the cause of action has accrued, for relief on the ground of breach of warranties is three years. G.S. 1-15; G.S. 1-46; G.S. 1-52(1).

Generally, a cause of action accrues to an injured party so as to start the running of the statute of limitations, when he is at liberty to sue, being at the time under no disability. *Washington v. Bonner,* 203 N.C. 250, 165 S.E. 683; *Winstead v. Manufacturing Co.,* 207 N.C. 110, 176 S.E. 304; *Motor Lines v. General Motors Corp.,* 258

N.C. 323, 128 S.E. 2d 413. When the statute of limitations begins to run, it continues until stopped by appropriate judicial process. *Speas v. Ford,* 253 N.C. 770, 117 S.E. 2d 784.

The burden was on the original defendants to show that they instituted the counterclaim to recover $50,000 damages from Norge, Rogers, Southeast, plaintiff, and Borg, jointly and severally, within the time prescribed by the statute of limitations. *Swartzberg v. Insurance Co.,* 252 N.C. 150, 113 S.E. 2d 270.

Original defendants' argument in brief summary is as follows: (1) Plaintiff, Norge, and Borg are actually a single entity, that the corporate structure should be disregarded, and that a counterclaim against one of them is effective against all; (2) the statute of limitations had not run against their counterclaim when plaintiff instituted this action, and the institution of this action tolled the running of the statute against plaintiff's *alter ego* Norge, and plaintiff's *alter ego* Borg; and (3) if a counterclaim or set-off is not barred at the commencement of the action in which it is pleaded, it does not become so afterward during the pendency of the action.

Ordinarily, a corporation retains its separate and distinct identity where its stock is owned partly or entirely by another corporation. 18 C.J.S., Corporations, § 5(j), p. 375. See *Troy Lumber Co. v. Hunt,* 251 N.C. 624, 112 S.E. 2d 132.

This is said in 19 Am. Jur. 2d, Corporations, § 717:

> "The fact that a corporation owns the controlling stock of another does not destroy the identity of the latter as a distinct legal entity; and, ordinarily, no liability may be imposed upon the latter for the torts of the subsidiary corporation. The facts that corporations have common officers, occupy common offices, and to a certain extent transact business for each other do not make the one corporation liable for the action of the other, except upon established legal principles. However, a corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded."

In *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 32 S.E. 2d 34, it was held that the mere fact that one corporation owns all the capital stock of another corporation, and the further fact that the members of the board of directors of both corporations are the same, nothing else appearing, is not sufficient to render the parent corporation liable for the contracts of its subsidiary. In order to establish liability on the part of the parent

corporation on such contracts, there must be additional circumstances showing fraud, actual or constructive, or agency.

In 1 Fletcher, Cyclopedia Corporations, perm. ed., p. 204 *et seq.*, it is said: "The control necessary to invoke what is sometimes called the 'instrumentality rule' is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal. It must be kept in mind that the control must be shown to have been exercised at the time the acts complained of took place in order that the entities be disregarded at the time."

The clearest statement we have found with respect to this area of the law is in *Lowendahl v. Baltimore & O. R. Co.*, 247 App. Div. 144, 287 N.Y.S. 62, 76, affirmed 272 N.Y. 360, 6 N.E. 2d 56, where the Court said:

> "Restating the instrumentality rule, we may say that in any case, except express agency, estoppel, or direct tort, three elements must be proved:
>
> " '(1)  Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> " '(2)  Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> " '(3)  The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.' See Powell 'Parent and Subsidiary Corporations,' chapters I to VI, *passim*, and numerous cases cited."

Quoted with approval in *National Bond Finance Co. v. General Motors Corp.*, 238 F. Supp. 248 (1964), affirmed 341 F. 2d 1022. See also *Fisser v. International Bank*, 282 F. 2d 231 (1960).

Original defendants allege in their counterclaim that the false warranties and false representations inducing the sale of the dry cleaners and washers to them were made to them by Southeast and Rogers, who held themselves out to original defendants as agents and representatives of Norge, and were permitted by Norge to do so. They further allege that plaintiff is an *alter ego* of Borg and that Norge is an *alter ego* of Borg. Original defendants' counterclaim alleges conclusions, but it does not allege facts to show that Borg had complete domination not only of the finances but of policy and

business practice of plaintiff and Norge in respect to the transaction attacked so that the corporate entity of plaintiff and Norge had at the time no separate mind, will or existence of their own. A careful examination of the whole of original defendants' counterclaim cannot justify a disregard of the corporate identity of plaintiff and of Norge and of Borg under either the general or specific tests announced by the cases and textbooks as set forth above. Original defendants' argument that plaintiff, Norge and Borg are actually a single entity, that the corporate structure should be disregarded, and that a counterclaim against one of them is effective against all, and that the institution of this action tolled the running of the statute against plaintiff's *alter ego* Norge and plaintiff's *alter ego* Borg is unsound.

Plaintiff's action was commenced by the issuance of summons on 27 November 1963. On 4 December 1963 there was service on original defendants. On 5 March 1964 Norge, Southeast, and Rogers, on motion of the original defendants, were made additional defendants by the clerk of the Superior Court of Mecklenburg County, and the secretary or assistant secretary of Norge and Southeast, and Rogers individually were ordered to appear before a commissioner on the ............ day of the year 1964 as subpoenaed, for the purpose of being examined in this action in the manner prescribed by Chapter 1, Article 46, of the General Statutes of North Carolina, and the said secretary or assistant secretary of Norge and Rogers individually were ordered to bring with them the minute books of the corporations and paper writings containing the written contractual arrangements between themselves and between themselves and plaintiff. There is nothing in the record to show that any summons was ever issued against Norge, Southeast, and Rogers. G.S. 1-14. "Due process of law" requires that a defendant shall be properly notified of the proceeding against him, and have an opportunity to be present and to be heard. "When the defendant has been duly served with summons personally within the State, or has accepted service or has voluntarily appeared in court, jurisdiction over the person exists and the court may proceed to render a personal judgment against the defendant. If there has been no service of summons and no waiver by appearance, the court has no jurisdiction and any judgment rendered would be void." 1 McIntosh, N. C. Practice and Procedure, 2d Ed., § 933(1). When Norge under order of the court appeared for examination by original defendants to obtain information for original defendants to file an answer and counterclaim, that did not amount to a waiver of service of summons by appearance, because G.S. 1-103 provides a voluntary appearance of defendant is equivalent to personal service of summons.

The only summons in this case in the record before us against Borg is one issued on 1 February 1965 by the deputy clerk of the Superior Court of Forsyth County, which commands Borg through its duly appointed process agent in Durham, North Carolina, to appear before the undersigned clerk at his office in the courthouse in Winston-Salem, North Carolina, and file written answer to the complaint in this action within 30 days after the date of service of this summons. Such summons is, to say the least, highly irregular. Original defendants' answer and counterclaim to recover $50,000 damages, by reason of breach of warranties and fraudulent representations, from plaintiff, Borg, Norge, Southeast, and Rogers, jointly and severally, was verified on 30 January 1965, filed on 1 February 1965, and in this pleading original defendants moved that Borg be made an additional defendant. Borg was made an additional defendant on 1 February 1965. The original defendants' answer and counterclaim was filed in the office of the clerk of the Superior Court of Mecklenburg County on 1 February 1965. Norge's reply to original defendants' answer and counterclaim was verified on 18 February 1965. There is nothing in the record to show when it was filed in court. Borg's reply to original defendants' answer and counterclaim was verified on 18 February 1965. There is nothing in the record to show when it was filed in court. The same is true in respect to plaintiff's reply. The original defendants' answer and counterclaim clearly and affirmatively shows that during the months of March and April 1961 they had actual knowledge of the alleged breach of warranties and fraudulent representations in the sale of the dry cleaners and washers to them; that their spare parts account between February 1961 and December 1961 to purchase replacements for defective parts in the dry cleaners amounted to $2,487.24; that they made payments upon their note given for the dry cleaners and washers though they had actual knowledge of breach of warranties and fraudulent representations; and that they notified Norge and Southeast that the machines were defective and did not comply with their warranties and representations, and their expenses in attempting to use the machines were prohibitive, and that they were in danger of losing all their business.

Original defendants had actual knowledge of the alleged false representations and of the alleged breach of warranties in March and April, 1961, and at that time the statute of limitations began to run against them as to their alleged counterclaim for damages against plaintiff, Norge, and Borg. This was more than three years prior to original defendants' filing their answer and counterclaim for damages on 1 February 1965; more than three years prior to the date when Norge, who had not been served with proper process,

filed a reply to their answer and counterclaim, which reply was verified by Norge on 18 February 1965 which voluntarily brought Norge into this action; more than three years prior to the irregular process issued against Borg on 1 February 1965 ordering it to appear in the office of the clerk of the Superior Court of Forsyth County and answer the complaint in this action; and more than three years prior to the date when Borg, who had not been served with proper process, filed a reply to original defendants' answer and counterclaim. Since original defendants' answer and counterclaim was not filed until 1 February 1965, we assume that Norge's and Borg's replies were not filed before they were verified, and certainly they were not filed before original defendants filed their answer and counterclaim. Since the plea of the three-year statute of limitations by Norge and Borg is clearly established by facts alleged in the original defendants' answer and counterclaim, it follows that the judgments on the pleadings in favor of Norge and Borg are correct. Our view finds support in *Speas v. Ford, supra.* In that case, where defendant Ford in his answer alleges that he refused to comply with his contract on the contractual date because of his discovery of fraudulent representations inducing his execution of the contract, and files a cross-action against plaintiffs and the additional defendants for damages for such fraud more than three years after the contractual date, and when each of the parties thus brought into the action denied the alleged fraud and pleaded the three-year statute of limitations, judgment dismissing the cross-action as to the additional defendants thus brought in on original defendant's motion based upon their plea of the three-year statute of limitations was held without error.

In *Erickson v. Starling,* 235 N.C. 643, 71 S.E. 2d 384, it is said:

"A court of record has inherent power to render judgment on the pleadings where the facts shown and admitted by the pleadings entitle a party to such judgment. [Citing authority.]

"A motion for judgment on the pleadings is in the nature of a demurrer. [Citing authority.] Its function is to raise this issue of law: Whether the matters set up in the pleading of an opposing party are sufficient in law to constitute a cause of action or a defense. [Citing authority.]

\*          \*          \*

"A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact."

Original defendants assert in their counterclaim that Rogers and Southeast by false warranties and false representations—which are

alleged in great detail in the counterclaim—induced them to pur-
chase the dry cleaners and washers, and to execute the note and
conditional sales contract plaintiff sues on in this action. They fur-
ther allege that Southeast and Rogers were agents of Norge. We
have held that neither plaintiff nor Norge is an *alter ego* of Borg.
There is no allegation in original defendants' answer and counter-
claim that plaintiff knew anything about the alleged false warran-
ties and false representations or participated in them in any way.
Neither does it allege any facts to show that plaintiff was respon-
sible legally for the alleged torts of Southeast and Rogers. Original
defendants' counterclaim is so fatally deficient in substance as
against plaintiff that it presents no material issue of fact to sup-
port a recovery from plaintiff of damages in the amount of $50,000,
or to operate as a set-off against plaintiff's claim. Consequently, it
is subject to a judgment on the pleadings. The judgment on the
pleadings should have been granted on the ground that the original
defendants' counterclaim is fatally deficient in substance. Therefore,
the granting of the judgment on the pleadings in favor of plaintiff
was correct, though it was placed on the wrong ground. *Sanitary
District v. Lenoir,* 249 N.C. 96, 105 S.E. 2d 411; *Hayes v. Wilming-
ton,* 243 N.C. 525, 91 S.E. 2d 673.

Original defendants in their brief contend that equity should
prevent appellees from pleading the statute of limitations as a de-
fense against their counterclaim. This contention is not tenable. In
the first place, defendants have not pleaded that the appellees are
estopped to plead the statute of limitations, 2 Strong's N. C. Index,
Estoppel, § 6, and second, "equity will not afford relief to those who
sleep upon their rights, or whose condition is traceable to that want
of diligence which may fairly be expected from a reasonable and
prudent man." *Coppersmith v. Insurance Co.,* 222 N.C. 14, 21 S.E.
2d 838. On a motion for judgment on the pleadings, we consider the
pleadings, and nothing else. Consequently, the detailed facts set
forth in original defendants' brief as to why appellees should be
estopped to plead the statute of limitations cannot and will not be
considered by the Court in considering the motion for judgment on
the pleadings. *Erickson v. Starling, supra.*

All three judgments below are
Affirmed.


PLESS, J., took no part in the consideration or decision of this
case.