OLD SOUTHERN LIFE INSURANCE CO. v. BANK OF NORTH CAROLINA, N.A., AND ALL STATES LIFE INSURANCE COMPANY

No. 7726SC292

(Filed 18 April 1978)

1. **Uniform Commercial Code § 25— certificate of deposit—governed by Uniform Commercial Code**

   A certificate of deposit which certified that "Allstate Life Ins. Co. or Commissioner of Ins. of Alabama as their interest may appear . . ." had deposited with defendant's Charlotte office $100,000 which specified that payment could be obtained "upon surrender of [the] certificate properly endorsed twelve months after date . . ." and which provided that the certificate was automatically renewed for a like term and interest rate if not presented for

payment within ten days after maturity was an instrument within the meaning of G.S. 25-9-105(1)(g) and was therefore governed by the Uniform Commercial Code.

2. **Rules of Civil Procedure § 56.4; Uniform Commercial Code § 25— certificate of deposit—assignment—no issue of fact raised—summary judgment proper**

In an action to recover on a certificate of deposit issued by defendant to "Allstate Life Ins. Co. or Commissioner of Ins. of Ala." and allegedly assigned to plaintiff, summary judgment was properly entered for plaintiff, since evidence presented by plaintiff at the summary judgment hearing included its unverified complaint alleging that on 11 October 1975 All States assigned the certificate to plaintiff and that it was the lawful owner and holder of the certificate; a copy of the certificate attached to the complaint indicating on its face a valid assignment; and plaintiff's interrogatory and deposition of defendant, through one of its officers, in which defendant failed to offer any fact which would place the validity of the assignment in issue and failed to deny specifically the validity of the signature made in connection with the assignment.

3. **Corporations § 1.1; Rules of Civil Procedure § 56.4— one corporation as alter ego of another—no issue of fact raised—summary judgment proper**

In an action to recover on a certificate of deposit issued by defendant to "Allstate Life Ins. Co. or Commissioner of Ins. of Ala." and allegedly assigned to plaintiff, there was no merit to defendant's contention that its evidence raised an issue of fact as to whether All States was operating as the alter ego of Insurance Industries, Inc., a corporation which had borrowed $370,000 from defendant, and as to whether defendant was entitled to setoff All States' $100,000 certificate of deposit against Insurance Industries' $370,000 debt on the ground the two corporations were in effect one entity, since (1) defendant failed to show that All States was acting as the alter ego of Insurance Industries at the time the $370,000 loan was made to Insurance Industries or at the time the certificate of deposit was issued to All States or the Commissioner of Insurance of Alabama, and evidence for both plaintiff and defendant indicated that at the time of the $370,000 loan All States was not affiliated with or exercising control over Insurance Industries and that the certificate of deposit was issued to All States or the Commissioner of Insurance of Alabama pursuant to a statutory requirement placed on All States by the State of Alabama; (2) defendant failed to allege sufficient facts even to raise an inference of illegality or fraud on the part of All States or Insurance Industries in obtaining the $370,000 loan or the certificate of deposit; and (3) since the evidence presented by defendant was insufficient to raise the alter ego question, no mutuality of debts could be established between All States and defendant and the setoff against All States on Insurance Industries' debt was improper; moreover, defendant's argument that mutuality of debts was not required because of the fact that Insurance Industries and All States were insolvent was also without merit.

4. **Rules of Civil Procedure § 56.4— certificate of deposit as security for loan—no issue of fact raised—summary judgment proper**

In an action to recover on a certificate of deposit issued by defendant to "Allstate Life Ins. Co. or Commissioner of Ins. of Ala." and allegedly assigned

to plaintiff, there was no merit to defendant's contention that its evidence raised a question of fact as to whether the deposit by All States was security for a loan made by defendant to Insurance Industries, Inc., since the note in question did not list the certificate of deposit as security; plaintiff's evidence showed that the certificate was to fulfill an Alabama statutory posting requirement; and defendant's affidavit that All States' certificate of deposit was security for Insurance Industries' loan was incompetent, as it added to or varied the terms of the promissory note and certificate of deposit.

APPEAL by defendant bank from *Snepp, Judge.* Judgment entered 17 December 1976. Heard in the Court of Appeals 2 February 1978.

On 20 January 1976, plaintiff, an Alabama Life Insurance Company, filed a complaint against defendant bank (hereinafter referred to as defendant) and All States Life Insurance Company (All States). In its claim against defendant, plaintiff alleges that it is an assignee of a $100,000 certificate of deposit (CD) issued by defendant to "Allstate Life Ins. Co. or Commissioner of Ins. of Ala." and that defendant has refused to honor its demand for payment. The assignment found on the back of the CD provides:

Pay to the order of OLD SOUTHERN LIFE INSURANCE COMPANY, INC.

ALL STATES LIFE INSURANCE COMPANY

Allstate Life Ins. Co.

BY: Edwin K. Livingston (signature)
Attorney for ALL STATES Life Insurance Company

Plaintiff contends that under the terms of the assigned CD defendant is indebted to it in the amount of $117,000.

In its claim against All States, plaintiff alleges that the CD was issued to All States on or about 19 January 1972; that plaintiff instituted two civil actions against All States in Alabama which were settled in a stipulated consolidated judgment for $100,000; that no appeal has been taken from that judgment; and that the time for appeal has expired. Based on the two claims plaintiff seeks to recover $117,000 plus interest from defendant or, in the alternative, to recover $100,000 plus interest from All States.

In its answer, defendant denies that All States deposited $100,000 with defendant and that it issued a CD therefor. In response to plaintiff's allegations concerning the assignment of the CD, defendant alleges that the CD as a writing is the best evidence of its contents. Defendant also alleges that since it is without information or knowledge concerning plaintiff's claim against All States, all allegations with respect to that claim are denied.

As a further defense, defendant alleges that it extended a loan to Insurance Industries, Inc. (III), and the proceeds were used to purchase the CD in the name of All States; that on and after 19 January 1972, Ernest Harris was the chief executive officer, chairman of the board of directors, and principal stockholder of III and All States; that All States was operated as the alter ego of Ernest Harris and/or III; that on 19 November 1975, the loan to III was in default and that defendant applied the $100,000 represented by the CD as a setoff on the loan; that on the same date defendant notified All States and the Commissioner of Insurance of Alabama that the CD had been used as a setoff on III's debt and would not be honored upon presentment; and that since the CD funds were applied to the debt of III defendant is not indebted to any party on the CD.

From the interrogatories, depositions and affidavits filed by plaintiff and defendant, the following appears:

In early January 1972, Ernest Harris, president and director of III, applied to defendant for a loan for III in the amount of $370,000 for the purpose of purchasing the controlling stock in All States. Pursuant to this application, defendant loaned III said amount as evidenced by a note and security agreement executed on 19 January 1972. Security for the loan listed on the promissory note included: 69,299.17 shares of All States; assignment of lease on Asheville Airport Property; assignment of certain promissory notes; and a mortgage on Sara Lynn Motel, Rockingham, N. C. On 19 January 1973, the loan was refinanced and the new note listed the same security. Ernest Harris signed as president of III on both notes, but the only common endorsers on the two notes were Ernest and Carolyn Harris. The original handwritten notes of defendant's official who made the loan state: "Collateral: 1. Assignment of various notes totaling over $200,000 (with wives)

2. 98.2% stock of Allstate Life insurance (sic) of alabama (sic) 3. assignment of lease of property in Ashville (sic) 4. mortgage of motel in Rockingham. Purpose: To purchase 98.4% of stock of Allstate Life Insurance Company of Alabama. Background: Mr. Harris has been our customer for 1 year. He is president of III and once this purchase is concluded, he will move the main operations to Charlotte. This life insurance company will also maintain their primary account with us as well as maintain a CD of $100,000, that is pledged to the State of Alabama."

After acquiring the $370,000 loan and purchasing All States, Ernest Harris became president and a member of the board of directors of All States. On 19 January 1972, All States deposited $200,000 in a new checking account with defendant and purchased a $100,000 CD in the name of "Allstate Life Ins. Co. or Commissioner of Ins. of Alabama." The CD was posted by All States with the Commissioner of Insurance of Alabama to fulfill a statutory requirement for conducting insurance business in that state.

Ernest Harris testified in his deposition that the CD was purchased to comply with Alabama law requiring $100,000 or the equivalent to be pledged to the Alabama Commissioner of Insurance; that "[t]he Bank never asked [him] on behalf of Insurance Industries or Allstates to pledge the certificate of deposit as security for the loan"; that he did not at any time consider the CD as security for the $370,000 loan; that he owned some stock in III and All States; and that III was the majority stockholder in All States following the purchase of the controlling interest on 19 January 1972.

Defendant paid interest on the CD to All States on 29 January 1974, 27 February 1974, and 22 January 1975. All States and plaintiff entered into a re-insurance agreement on 31 December 1973 whereby plaintiff took over all of All States' life insurance business. As part of the consideration for that agreement, All States executed a note to plaintiff for $85,691 with interest at 8%. As security for the note, All States pledged to plaintiff its statutory deposit (the CD) with the State of Alabama. All States defaulted on the note to plaintiff and plaintiff brought suit against All States. The suit was settled by stipulation of the parties and final judgment for $100,000 in favor of plaintiff was entered 16 October 1975. Pursuant to the settlement, All States

assigned the CD to plaintiff after the Commissioner of Insurance of Alabama had released his interest.

According to its records, defendant first considered the $370,000 loan to III a bad loan on 6 May 1974. A loan critique on that date indicates that the primary security on the loan included the assignment of the Asheville airport lease, 69,229 shares of All States stock, 48,000 shares of III stock, 10,000 shares of International Speedways stock, and as secondary security, 9 Ouachita Lots in Monroe, La. The security interest in the Sara Lynn Motel had been realized on 18 June 1973, and the remaining security was insufficient to cover the debt of III. On 7 June 1974, defendant advised an indorser on the note that if the balance due was not paid, the pledged security, which did not include the CD, would be sold at private sale.

Plaintiff notified defendant by telephone and letter dated 17 October 1975 of its interest in the $100,000 CD and made demand for payment. According to a file memorandum of defendant dated 19 November 1975, defendant decided to set off the $100,000 CD against the $370,000 loan to III since they "considered Insurance Industries and Allstates to be mere instrumentalities or alter egos of each other, and/or shield for the activities of Ernest Harris, who was president of both companies" due to the purported commingling of funds between the three entities. On 20 January 1976, plaintiff's attorneys presented the CD to defendant for collection and payment was refused on the ground that the CD had been setoff against the loan to III.

Additional pertinent facts are set forth in the opinion. On the basis of the pleadings, interrogatories, exhibits and deposition, the court allowed plaintiff's motion for summary judgment against defendant.

*James, McElroy and Diehl, by James H. Abrams, Jr., for plaintiff appellee.*

*Griffin, Gerdes, Harris, Mason and Brunson, by N. Deane Brunson and C. Michael Wilson, and Fleming, Robinson and Bradshaw, by A. Ward McKeithan, for defendant appellant.*

BRITT, Judge.

Defendant contends in its sole assignment of error that the trial court erred in granting plaintiff's motion for summary judgment. Defendant argues: (1) that plaintiff was not entitled to summary judgment as a matter of law since it offered no affidavits, depositions or evidence of its unverified allegations which were all denied by defendant; and (2) that plaintiff was not entitled to summary judgment since defendant raised genuine issues of material facts on three questions: (a) whether plaintiff is the lawful owner and holder of the CD pursuant to a proper and valid assignment, (b) whether All States was a mere instrumentality or alter ego of III, and (c) whether the deposit by All States was security for the $370,000 loan of III.

Summary judgment is controlled primarily by G.S. 1A-1, Rule 56. Subsection (a) provides that a claimant may move with or without supporting affidavits for a summary judgment in his favor. Subsection (c) provides, among other things, that the judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. Subsection (e) provides that any supporting or opposing affidavits shall be made on personal knowledge, "shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein". Subsection (e) also provides that when a motion for summary judgment is made and supported as provided by Rule 56, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in the rule must set forth *specific facts* showing that there is a genuine issue for trial.

In addition, *Kidd v. Early*, 289 N.C. 343, 370, 222 S.E. 2d 392, 410 (1976), sets forth the following standards for determining when summary judgment is appropriate for the claimant.

> Nothing in our State Constitution nor in our decisions precludes summary judgment in favor of a party with the burden of persuasion when the opposing party has failed to respond to the motion in the manner required by Rule 56(e) or (f) and no "genuine issue as to any material fact" arises

out of movant's own evidence or the situation itself challenges credibility. Under these circumstances Rule 56(e) provides that summary judgment *shall be entered.*

\* \* \*

The purpose of Rule 56 is to prevent unnecessary trials when there are no genuine issues of fact and to identify and separate such issues if they are present. To this end the rule requires the party opposing a motion for summary judgment — notwithstanding a general denial in his pleadings — to show that he has, or will have, evidence sufficient to raise an issue of fact. If he does not, "summary judgment, if appropriate, shall be entered against him." To hold that courts are not entitled to assign credibility as a matter of law to a moving party's affidavit when the opposing party has ignored the provisions of (e) and (f) would be to cripple Rule 56. *See* 10 Wright and Miller § 2740.

\* \* \*

To be entitled to summary judgment the movant must still succeed on the basis of his own materials. He must show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from his evidence; and that there is no standard that must be applied to the facts by the jury. . . .

*See also* 10 Wright & Miller, Federal Practice and Procedure: Civil § 2727 (1973).

In order to determine whether the movant has complied with the above requirements of Rule 56 and standards set forth by case law, North Carolina courts have followed the interpretation of similar provisions in Federal Rule 56 and allowed the court to consider the pleadings, affidavits that meet the requirements of G.S. 1A-1, Rule 56(e), depositions, answers to interrogatories, admissions, oral testimony, documentary materials, facts which are subject to judicial notice, and such presumptions as would be available at trial. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Butler v. Berkeley,* 25 N.C. App. 325, 213 S.E. 2d 571 (1975). Affidavits may be relied upon by the parties, but are not required, since the parties may rely upon matters in the record.

However, Rule 56(e) does require an adverse party to do more than merely rely on his pleading if the movant supports his motion by *affidavit or otherwise*. Shuford, N.C. Civil Practice and Procedure § 56-6 (1975).

"[T]he question of when the burden will shift to the opposing party may depend on the type of proof utilized by the moving party. . . . '[I]f the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden * * * . . . .' " If the moving party makes out a prima facie case that would entitle him to a directed verdict at trial, summary judgment will be granted unless the opposing party presents some competent evidence that would be admissible at trial and that shows that there is a genuine issue as to a material fact. 10 Wright and Miller, Federal Practice and Procedure: Civil § 2727, pp. 536, 537 (1973). In addition, as is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged by means of a timely objection. 10 Wright and Miller, Federal Practice and Procedure: Civil § 2722 (1973).

Applying these principles to the present factual situation, we conclude that plaintiff presented sufficient competent evidence to support a summary judgment (in the form of a deposition and interrogatory of defendant, documentary exhibits and an affidavit) and that defendant failed to offer competent evidence to contradict plaintiff's evidence and raise a genuine issue of fact. An examination of the applicable law governing the CD and a close analysis of the three questions of fact which defendant contends it raised by presenting competent contradictory evidence to overcome plaintiff's summary judgment motion, supports this conclusion.

[1]   The crux of this case evolves around the CD which ". . . certifies that Allstate Life Ins. Co. or Commissioner of Ins. of Alabama as their interest may appear . . ." has deposited with defendant's Charlotte office $100,000. By the terms on the certificate, payment could be obtained "[u]pon surrender of [the] certificate properly endorsed 12 months after date, with interest of 4¼ percent per annum for the time specified only." However, the ". . . certificate [was] automatically renewed for a like term and interest rate if not presented for payment within 10 days after maturity."

By its terms the CD falls within the G.S. 25-9-105(1)(g) defini-
tion of instrument which states " 'Instrument' means a negotiable
instrument (defined in § 25-3-104), or a security (defined in
§ 25-8-102) or any other writing which evidences a right to the
payment of money and is not itself a security agreement or lease
and is of a type which is in ordinary course of business trans-
ferred by delivery with any necessary indorsement or assign-
ment." Since this certificate is an instrument within the scope of
the U.C.C., it is governed by the principles stated in G.S. 25-3-805
applying Article 3 to instruments which are non-negotiable only
because they are not payable to order or bearer. *Savings and
Loan Association v. Trust Co.*, 282 N.C. 44, 191 S.E. 2d 683 (1972),
and the rules stated under G.S. 25-9-304 regarding perfection of
security interests in instruments.

[2] Defendant first asserts that he has raised an issue of fact
with respect to the validity of the assignment of the CD. We find
no merit in this assertion because defendant failed to offer some
competent evidence that could be admitted at trial which would
raise a question of fact with respect to plaintiff's evidence that
the assignment was valid or show a good reason in accordance
with Rule 56(f) why it was unable to present facts justifying its
opposition to the plaintiff's assertion. G.S. 1A-1, Rule 56, 10
Wright and Miller, Federal Practice and Procedure: Civil § 2727,
p. 532 (1973).

Evidence presented by plaintiff at the hearing included its
unverified complaint alleging that on 11 October 1975 All States
assigned the CD to plaintiff and that it was the lawful owner and
holder of the CD; a copy of the CD attached to the complaint in-
dicating on its face a valid assignment; and plaintiff's inter-
rogatory and deposition of defendant, through J. Larry Harrill, in
which defendant failed to offer any fact which would place the
validity of the assignment in issue. Defendant's evidence which
allegedly raised a question of fact with respect to the validity of
the assignment included its general denial of the assignment,
based on information and belief, and the following statement in
the plaintiff's deposition of defendant's J. Larry Harrill:

> The Bank further contends that Old Southern Life In-
> surance Company (Old Southern) is not the lawful owner
> and/or holder of the certificate of deposit. We have no way to

determine that Old Southern is or is not the lawful owner. Although there is a purported assignment on the back of the certificate of deposit, which I have seen, we have no reason to believe that this is a valid and lawful assignment. Such assignments are generally made in front of us, i.e., the parties sign in the presence of a bank officer. This was not done in my presence. Clearly the certificate of deposit was not issued to Old Southern Life Insurance Company. . . .

Defendant also submitted affidavits in opposition to the summary judgment motion, but the only reference to the assignment of the CD was a statement to the effect that on or about October 1975, defendant received notice that All States had assigned the CD to plaintiff.

Rule 56(e) states that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied.) U.C.C. provision G.S. 25-3-307 provides that unless a signature is *specifically* denied in the pleadings, it is deemed admitted; and that when signatures are admitted, production of the instrument entitles a holder to recover on it unless the defendant can establish a defense. 2 Anderson UCC § 3-307-3-307:6 (2d ed. 1971). In the present case, defendant failed to set forth specific facts which would place the validity of the assignment in issue and failed to specifically deny the validity of the signature made in connection with the assignment. Consequently, pursuant to the Rules of Civil Procedure and the U.C.C. provisions, the assignment is deemed valid, the holder of the CD is entitled to recover unless defendant has raised a valid defense which would prevent recovery, and summary judgment is not precluded since no issue of fact with respect to the validity of the assignment was presented by defendant.

[3] Defendant next contends that its evidence raised an issue of fact as to whether All States was operating as the alter ego of III. Defendant argues that it was entitled to setoff All States' $100,000 CD against III's $370,000 debt since the two corporations

were in effect one entity, and that even if the two corporations were not acting as one, plaintiff still took the CD subject to defendant's right of setoff and other defenses. We find no merit in these contentions.

First, with respect to the alter ego argument, the general rule as stated in *Insurance Co. v. Bank*, 11 N.C. App. 444, 450, 181 S.E. 2d 799, 803 (1971), provides:

> The "alter ego" or "instrumentality" doctrine states that: "[W]hen a corporation is so dominated by another corporation, that the subservient corporation becomes a mere instrument, and is really indistinct from the controlling corporation, then the corporate veil of the dominated corporation will be disregarded, if to retain it results in injustice." *National Bond Finance Co. v. General Motors Corp.*, 238 F. Supp. 248 (W.D. Mo. 1964), aff'd, 341 F. 2d 1022 (8th Cir. 1965). In accord: *Acceptance Corp. v. Spencer*, 268 N.C. 1, 149 S.E. 2d 570.

> \*     \*     \*

> Stock ownership alone, however, is not a determining fact. There must be "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own. . . ." *Lowendahl v. Baltimore & O.R. Co.*, 247 App. Div. 144, 287 N.Y.S. 62, 76 aff'd, 272 N.Y. 360, 6 N.E. 2d 56; *Acceptance Corp. v. Spencer, supra.*

In addition, ". . . [t]he fact that one corporation and its officers own substantially all of the stock of another corporation does not justify a disregard of the separate corporate entities unless there are additional circumstances showing fraud, actual or constructive, or agency." 3 Strong's N.C. Index 3d, Corporations § 1.1, p. 474.

In the present case, plaintiff argues and shows by its evidence that All States' business was transferred to it pursuant to a re-insurance agreement and that the $100,000 CD which was in the possession of the Commissioner of Alabama was assigned to it by All States on 11 October 1975. Plaintiff makes no

reference to any involvement by III. Under the alter ego test stated above, defendant's evidence fails to allege sufficient facts to raise the alter ego question in two respects.

First, defendant failed to show that All States was acting as the alter ego of III at the time the $370,000 loan was made to III or at the time the CD was issued to All States or the Commissioner of Insurance of Alabama. Evidence for both plaintiff and defendant indicates that at the time of the $370,000 loan All States was not affiliated with or exercising control over III and that the CD was issued to All States or the Commissioner of Insurance of Alabama pursuant to a statutory requirement placed on All States by the State of Alabama. There is no evidence that these two transactions were financial moves in which All States was operating as the alter ego of III.

Second, defendant failed to allege sufficient facts even to raise an inference of illegality or fraud on the part of All States or III in obtaining the $370,000 loan or the CD. Evidence for plaintiff and defendant shows that defendant was aware at all times that the purpose of the $370,000 loan was to acquire control of All States; that the stated collateral for the loan were those items listed on the promissory note signed by III, and that the purpose of the CD was to provide the statutory deposit required by the State of Alabama for the protection of All States' policyholders. In addition, the evidence indicates that without the posting of the CD as required by the State of Alabama, the stated security on the promissory notes of 69,229.17 shares of All States stock would have been worthless since All States would not have been allowed to conduct business in Alabama.

In connection with the alter ego argument, defendant relied heavily on the case of *United States National Bank of Galveston, Texas v. Madison National Bank,* 355 F. Supp. 165 (D.D.C. 1973), *aff'd* 489 F. 2d 1273 (D.C. Cir. 1974). We have carefully considered that case but find it easily distinguishable from the instant case.

In order to invoke the right of setoff, a debtor-creditor relationship must exist between the parties. In *Coburn v. Carstarphen,* 194 N.C. 368, 370, 139 S.E. 596 (1927), the court stated:

> As a general rule a bank may apply the amount due by the bank to its depositor as a payment on a debt of the

depositor to the bank, at any time after the debt becomes due; this rule, however, applies only when the amount due as a deposit belongs to the depositor. It does not apply where the bank has knowledge that the money deposited belongs, not to the depositor, but to another, and was deposited in trust for the owner. 7 C.J., 653 and 658. The right of set-off arises and can be enforced only where there are mutual debts between the parties. The party invoking the right cannot maintain it, unless he could also maintain an action against the other party to recover the amount which he seeks to have allowed as a set-off or counterclaim. . . .

Since the evidence presented by defendant in the instant case was insufficient to raise the alter ego question, no mutuality of debts can be established between All States and defendant and the setoff against All States on III's debt was improper.

Defendant's next argument that mutuality of debts is not required in the present case because of the fact that III and All States are insolvent is equally without merit. In the cases in which that rule has been applied, the facts indicate that the deposit against which the setoff is applied is usually made in the name of the depositor for a third person who also maintains an independent cause of action against the depositor, *Coburn v. Carstarphen, supra,* or that some other close relationship exists between the depositor of the setoff funds and the indebted party. An example of the latter situation is where a bank is allowed to apply a deposit to the credit of an insolvent corporation against the debt due on a personal note given by the directors of the insolvent corporation to cover the insolvent corporation's prior note which was also kept as collateral security. *Trust Company v. Spencer,* 193 N.C. 745, 138 S.E. 124 (1927). Since All States and III were not involved in an exceptional situation similar to those recognized under N.C. law and cited by defendant in its brief, we find no merit in this contention.

[4] Finally, we find no merit in defendant's contention that its evidence raises a question of fact as to whether the deposit by All States was security for the loan made to III.

The refinancing note dated 19 January 1973 and the original note dated 19 January 1972 list as security 69,229.17 shares All States stock, assignment of a lease, assignment of certain promis-

sory notes, and an assignment of a mortgage on a motel but make no mention of the CD issued to All States. Plaintiff's evidence showed that the CD was to fulfill an Alabama statutory posting requirement. Defendant argues that this evidence is controverted by Gary Cooey's affidavit which stated that at the time of the loan to III, $100,000 represented by the CD issued to All States or the Commissioner of Insurance of Alabama was placed on deposit with defendant as a compensating balance, that defendant "looked to" the CD as security for the loan, and said amount was to remain on deposit so long as III owed money on the loan.

Rule 56(e) requires that affidavits set forth facts which would be admissible in evidence. Under the parol evidence rule, statements which contradict, add to, take from or in any way vary the express terms of a written instrument are not admissible in evidence. 2 Stansbury's N.C. Evidence §§ 251, 253, 256 (Brandis Rev. 1973). As a result, the assertion in defendant's (Cooey's) affidavit that the All States' CD was security for III's loan is incompetent as it adds to or varies the terms of the promissory note and the CD. Since plaintiff presented evidence showing that the CD was to fulfill Alabama statutory requirements, not as security on III's loan, and defendant failed to offer competent rebuttal evidence as required by Rule 56(e), no genuine issue of fact was raised as to whether All States' CD deposit was security for the III loan. Even if defendant could establish a security interest in the CD pursuant to the promissory note given by III, it failed to present any facts showing that it properly perfected its security interest in the CD by taking possession of it as required by U.C.C. 25-9-304.

For the reasons stated, we conclude that summary judgment for plaintiff was properly granted as no genuine issue of fact was raised by the pleadings or any additional evidence.

Affirmed.

Judges HEDRICK and WEBB concur.