**Wilma TURNER and Angie Milligan, Plaintiffs–Appellees,**

v.

**BANK OF COMMERCE, Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 30, 1988.

Permission to Appeal Denied by Supreme Court Dec. 5, 1988.

L.L. Harrell, Jr., Harrell, Harrell & Agee, Trenton, for defendant-appellant.

James Belew Webb, Flippin, Collins, Huey & Webb, Milan, for plaintiffs-appellees.

HIGHERS, Judge.

Defendant is appealing from an order of the Chancery Court at Gibson County awarding plaintiffs $27,431.84 in an action to recover funds which plaintiffs allege have been wrongfully converted by defendant.

This lawsuit involves three certificates of deposit issued by defendant, Bank of Commerce in Trenton, Tennessee, to Joe Turner and plaintiffs Wilma Turner and Angie Milligan. On July 7, 1986, the first certificate of deposit, in the amount of $5,000, was issued by defendant and was made payable to "Wilma Turner or Angie Milligan or Joe Turner." On July 8, 1986, a second certificate of deposit, in the amount of $6,780.63, was issued by defendant and was made payable in the same fashion as the first certificate of deposit. The third certificate of deposit, in the amount of $29,000, was issued by defendant on September 28, 1986, and was made payable to "Mrs. G.H. [Wilma] Turner or Angie Milligan or Joe Turner." The money used to purchase these certificates of deposit came from Mrs. Turner and her deceased husband's joint savings. Mrs. Turner testified that the reason she added the names of Angie Milligan and Joe Turner, her children, to the

three certificates of deposit was because "in case of my death ... it would all go to them."

In April of 1984, Joe Turner borrowed $30,000 from defendant. As collateral for this loan, Joe Turner pledged the $29,000 certificate of deposit. In 1985, as it became necessary for Joe Turner to borrow more funds from defendant, he pledged the remaining two certificates of deposit as collateral. When Turner received the funds for each loan, he endorsed the certificates of deposit and delivered them to defendant. As each certificate of deposit reached maturity, the interest that had accrued on each was deposited in Wilma Turner's checking account and new certificates of deposit were issued. Turner would then endorse the new certificates of deposit and deliver them to defendant, who at all times kept them with Turner's loan papers. Although both Wilma Turner and Angie Milligan knew that Turner was pledging the certificates of deposit as collateral to secure loans from defendant, neither one voiced any objections.

Thereafter, Joe Turner defaulted on his obligations to defendant and filed bankruptcy. On February 11, 1987, after Turner had been discharged in bankruptcy, defendant informed plaintiffs that it was foreclosing on the certificates of deposit in order to apply them to Turner's loans.

On February 24, 1987, plaintiffs filed suit in the Chancery Court at Gibson County alleging that defendant wrongfully used the certificates of deposit to pay off Turner's loans. The trial court held that defendant had not overcome the presumption that each party named on the certificates of deposit owned one-third of the funds. The trial court also found that defendant should have known that it was Wilma Turner who supplied the funds to purchase the certificates of deposit. The trial court awarded plaintiffs $27,431.84, or two-thirds of the value of the certificates of deposit. It is from this action of the trial court that defendant has appealed.

The only issue raised on this appeal is whether the trial court erred in awarding plaintiffs two-thirds of the value of the three certificates of deposit.

■ Plaintiffs contend that defendant's action of using the certificates of deposit to satisfy Turner's obligations amounted to a set-off so that T.C.A. § 45–2–703 (1987) is controlling:

**45–2–703. Deposits in two or more names.**—(a) When a deposit has been made or shall hereafter be made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to either of such persons, whether the others be living or not; and the receipt or acquittance of such person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. Any balance so created shall be subject to assignment by, or the claim of any creditor of, either depositor, as if such depositor were the sole owner of the funds; provided, however, that if such creditor realizes its claim, by garnishment, set off, or otherwise, any other depositor may, by appropriate action against the creditor, establish such rights as that depositor may have in the funds.

*See also Leffew v. Mayes,* 685 S.W.2d 288 (Tenn.App.1984). Plaintiffs argue that under this statute, they are entitled to at least two-thirds of the value of the certificates of deposit.

However, we do not find that this to be a set-off case. Instead, we are dealing with collateral, used to secure certain loans, in which defendant had a perfected security interest pursuant to the Uniform Commercial Code as enacted in Tennessee, T.C.A. § 47–3–101 *et seq.* As was stated by the Tennessee Supreme Court in *Continental Bankers Life Ins. Co. of the South v. Bank of Alamo,* 578 S.W.2d 625 (Tenn. 1979):

The writing that constitutes the basis for petitioner's demand for payment is a certificate of deposit. It is an instrument subject to the commercial paper statute. *See Old Southern Life Ins. Co. v. Bank of North Carolina,* [36 N.C.App. 18] 244

S.E.2d 264 (N.C.App.1978). T.C.A. § 47–3–104 provides the requirements of a negotiable instrument:

(1) Any writing to be a negotiable instrument within this chapter must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

(2) A writing which complied with the requirements of this section is

.    .    .    .    .

(c) a 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it.

The writing in controversy here meets all of the above criteria for negotiability except (1)(d), 'be payable to order or to bearer'; the CD reads, 'Payable to.' Under pre-UCC law there was some authority that a CD in this form was negotiable. *See generally* 5B Michie's Banks and Banking §§ 313–328 (1973). Though the comments to T.C.A. § 47–3–104(1)(d) authorize court-imposed substitutes for the symbols of negotiability, it was the intent of the drafters that 'in doubtful cases the decision should be against negotiability.' Comment 5, T.C.A. § 47–3–104; *see* White & Summers, Uniform Commercial Code 464–65 (1972). Nevertheless, though the instrument is nonnegotiable, it still falls within the scope of the commercial paper chapter of Title 47. T.C.A. § 47–3–805 provides, 'This chapter applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this chapter but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument.' *Accord, First Nat. Bank in Grand Prairie v. Lone Star Life Ins. Co.,* 17 UCC Rep.

835, 524 S.W.2d 525 (Tex.Civ.App.1975), cert. denied, 529 S.W.2d 67 (1975). *Id.* at 630. The court also noted that to perfect a security interest in a certificate of deposit, it must be taken "as a pledge by possession. T.C.A. § 47–9–304." *Id.*

There is no contradiction of the fact that defendant had continuous possession of the certificates of deposit which Joe Turner pledged to secure his loans. Plaintiffs, however, contend that although defendant retained possession of the certificates of deposit, no security interest arose as Joe Turner had no right to pledge the certificates as collateral because the funds used to purchase them belonged solely to Wilma Turner.

As noted earlier, each certificate of deposit was payable to either Wilma Turner *or* Angie Milligan *or* Joe Turner. The use of the conjunction "or" between each name, instead of "and," indicates that any party named may redeem the certificates of deposit. In addition, the reverse side of each certificate contains the following written provision:

JOINT CERTIFICATES: When two or more persons are named as depositors on this Certificate with the conjunction "or" appearing between names, then such Certificate shall be payable to any or the survivor or survivors of them and payment may be made upon surrender of this certificate to any of them during the lifetime of all, or to any survivor or survivors after the death of one or more of them. When the conjunction "and" appears between names, the Certificate shall be payable only upon the signatures of all depositors named.

Finally, the proof showed that it is defendant's practice that if "or" is used on a certificate of deposit, only one party is required to endorse it in order to redeem it.

There is no doubt that Joe Turner had the right to redeem or pledge each certificate of deposit because of the manner in which each was made payable. The evidence shows that it was Joe Turner only who would endorse and renew each certificate of deposit as it became due. Obviously, if Turner could endorse and renew each

certificate of deposit, he also has the right to endorse and pledge the certificates as collateral.

Accordingly, we find that the trial court erred in awarding plaintiffs two-thirds of the value of the certificates of deposit. The decision of the trial court is reversed and judgment is entered for defendant. Costs are taxed to appellees.

CRAWFORD and FARMER, JJ., concur.