NO. COA13-431

NORTH CAROLINA COURT OF APPEALS

Filed:  18 February 2014

JOSHUA STEPHENS,
     Plaintiff

     v.                              New Hanover County
                                     No. 11 CVS 356
SHELBY COVINGTON, JAMES HEWETT,
and GLENDA HEWETT,
     Defendants


     Appeal by plaintiff from order entered 3 October 2012 by Judge

Gary E. Trawick in New Hanover County Superior Court.  Heard in

the Court of Appeals 9 October 2013.


     *Smith Moore Leatherwood LLP, by Matthew Nis Leerberg, and The
     Kirby Law Firm, by Albert D. Kirby, Jr., for plaintiff-
     appellant.*

     *Culbreth Law Firm, LLP, by Stephen E. Culbreth, for defendant-
     appellee.*


     CALABRIA, Judge.


     Joshua Stephens ("plaintiff") appeals from an order granting

summary judgment in favor of Shelby Covington ("defendant").

Defendants James and Glenda Hewett (collectively, "the Hewetts")

are not parties to this appeal.  Plaintiff only appeals the 3

October 2012 order granting summary judgment in defendant's favor.

We affirm.

## I. Background

In the early 1990s, the Hewetts leased a home located on Louisiana Avenue in Wilmington, North Carolina ("the property") from defendant's husband, John Covington ("Mr. Covington") (collectively with defendant, "the Covingtons"). Mr. Covington knew that the Hewetts owned a Rottweiler ("Rocky"), and since the houses in the neighborhood were close together, Mr. Covington and the Hewetts contacted Animal Control regarding safety measures for keeping a dog. As a precaution and at the direction of Animal Control, the Hewetts created a fenced area in the backyard with two gates and posted "Beware of Dog" and "No Trespassing" signs on each gate.

Shortly after the Hewetts leased the property, but prior to purchasing it, Rocky grew so large that the Hewetts began keeping Rocky exclusively in the fenced area. At the time the incident in the instant case occurred, plaintiff was eight years old. Plaintiff visited his friend Jeremy Hewett ("Jeremy"), the Hewetts' nine-year-old son. During plaintiff's visit, plaintiff followed Jeremy when he entered the fenced area to refill Rocky's water dish. While the boys stood in the fenced area, Rocky bit plaintiff's lower leg. Jeremy hit Rocky with a stick to make him release plaintiff. When Jeremy was unsuccessful, he ran to get

his mother. Rocky briefly released plaintiff, but then bit him again, catching plaintiff's shoulder in his teeth. Eventually Glenda Hewett managed to release plaintiff from Rocky, and a neighbor pulled plaintiff over the fence, safely away from Rocky. Plaintiff sustained "extremely severe" injuries to both his leg and shoulder. Animal Control officers investigated and took statements from witnesses. After Rocky remained at the animal shelter for a ten day mandatory quarantine period, James Hewett decided to have him euthanized.

In October 2008, after plaintiff reached majority, he filed a complaint against the Covingtons and the Hewetts. However, since Mr. Covington died in 1998, the complaint was voluntarily dismissed without prejudice. Plaintiff refiled the complaint against the Hewetts and defendant on 27 January 2011. Plaintiff alleged, *inter alia*, negligence against the Hewetts and defendant. On 21 November 2012, the trial court entered a final judgment of $500,000 against the Hewetts as compensatory damages. On 12 March 2012, defendant filed a motion for summary judgment. After a hearing in New Hanover County Superior Court, the trial court entered an order on 3 October 2012 granting defendant's motion. Plaintiff appeals the order granting summary judgment in defendant's favor.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Id*. (citation omitted).

## III. Landlord's Liability to Third Parties for Injuries by Tenant-Owned Dogs

Plaintiff argues the trial court erred by granting defendant's motion for summary judgment because there was a genuine issue of material fact as to whether defendant had control over the dangerous animal which attacked plaintiff. We disagree.

Plaintiff's argument relies primarily upon *Holcomb v. Colonial Assocs., L.L.C.*, in which our Supreme Court considered "whether a landlord can be held liable for negligence when his tenant's dogs injure a third party." 358 N.C. 501, 503, 597 S.E.2d 710, 712 (2004). In *Holcomb*, a contractor sustained injuries when a tenant's Rottweiler dog "lunged" at him, causing him to fall to the ground. *Id*. at 504, 597 S.E.2d at 713. The landlord had

allowed the tenant to keep two Rottweiler dogs which were permitted to run freely on the property despite the landlord's awareness of two prior instances of aggression on the part of the dogs, one of which resulted in a bite. *Id*. at 504, 597 S.E.2d at 712-13. The landlord continued to allow the dogs despite a written lease agreement which required the tenant to promptly remove any pet the landlord deemed to be a nuisance or undesirable. *Id*. at 503, 597 S.E.2d at 712.

Under a premises liability theory, the *Holcomb* Court held that the landlord could be held liable because the "lease provision granted [landlord] sufficient control *to remove the danger* posed by [tenant]'s dogs." *Id.* at 508-09, 597 S.E.2d at 715 (emphasis added). Plaintiff in the instant case contends that there was a genuine issue of material fact as to whether defendant possessed similar control over Rocky at the time he was attacked.

However, as all of the cases relied upon by the *Holcomb* Court make clear, it is not mere generalized control of leased property that establishes landlord liability for a dog attack, but rather specific control of a known dangerous animal. *See Batra v. Clark*, 110 S.W.3d 126, 130 (Tex.App.-Houston 1st Dist. 2003) ("[I]f a landlord has actual knowledge of an animal's dangerous propensities and presence on the leased property, and has the

ability to control the premises, he owes a duty of ordinary care to third parties who are injured by this animal."); *Uccello v. Laudenslayer*, 118 Cal. Rptr. 741 (1975) (landlord renewed tenants' lease with knowledge that tenants' dog previously attacked two people); *Shields v. Wagman*, 714 A.2d 881 (Md. 1998) (leasing company knew dog had vicious tendencies and had control over dog's presence on the property); *McCullough v. Bozarth*, 442 N.W.2d 201, 208 (Neb. 1989) (landlord only liable for injuries caused by tenant's dog when he has "actual knowledge of the dangerous propensities of the dog and . . . nevertheless leased the premises to the dog's owner or . . . had the power to control the harboring of a dog by the tenant and neglected to exercise that power."). The *Holcomb* Court was able to presume the dog which attacked the contractor in that case was dangerous, because the undisputed evidence before it was that the landlord had knowledge of the dogs' previous attacks and dangerous propensities. *Id.* at 504, 597 S.E.2d at 712-13. Nonetheless, it was still clear from that decision that it was not merely the landlord's control of the property, but particularly the landlord's "sufficient control to *remove the danger* posed" which resulted in the landlord's liability. *Id.* at 508, 597 S.E.2d at 715 (emphasis added). Thus, pursuant to *Holcomb* and the cases cited therein, a plaintiff must specifically

establish both (1) that the landlord had knowledge that a tenant's dog posed a danger; and (2) that the landlord had control over the dangerous dog's presence on the property in order to be held liable for the dog attacking a third party.

In the instant case, there is no evidence that defendant or her husband knew or had reason to know that Rocky was dangerous. While Mr. Covington requested that James Hewett contact Animal Control prior to Rocky occupying the property, deposition testimony indicates that the purpose behind this call was to obtain advice on erecting a fence to confine the dog to the yard in accordance with local ordinances, rather than because the dog had displayed any aggression. The record also indicates that there were no reported incidents of aggression, and no one had complained about Rocky to Animal Control or to the Covingtons prior to plaintiff's visit on 25 January 1996. During the investigation of the incident, Animal Control officers did not interview the Covingtons. Animal Control officer Chloe Rivenbark testified at her deposition in the matter that "there was really no need to talk to [the Covingtons]. [Animal Control officers] were dealing mainly with the children and the families that were involved." Finally, defendant specifically testified in her deposition that "the dog didn't have a bad name of biting anybody or anything that

I ever heard tell of [sic]," and that Mr. Covington "would have not allowed [sic] . . . anything there that was dangerous[.]" Thus, unlike the landlord in *Holcomb*, defendant did not have knowledge of a dangerous dog on the property.

Nonetheless, plaintiff contends that defendant did not need to have actual knowledge of Rocky's dangerous propensities because this Court has previously held that dog owners in a negligence action were "chargeable with the knowledge of the general propensities of the Rottweiler animal." *Hill v. Williams*, 144 N.C. App. 45, 55, 547 S.E.2d 472, 478 (2001) (citation omitted). In *Hill*, a local veterinarian testified that the Rottweiler breed was "aggressive and temperamental, suspicious of strangers, protective of their space, and unpredictable." *Id*. at 48, 547 S.E.2d at 474. The defendants presented no evidence to refute the plaintiffs' evidence of the breed's aggressive tendencies, and as a result, they were "chargeable . . . with knowledge of the general propensities of a Rottweiler dog *as reflected in plaintiffs' evidence*[.]" *Id*. at 55, 547 S.E.2d at 478 (emphasis added).

In the instant case, plaintiff did not present any evidence demonstrating that the Rottweiler breed is generally dangerous. The only evidence regarding the general propensities of Rottweilers was the deposition testimony of Animal Control Officer

Ron Currie ("Officer Currie"). Officer Currie testified that socializing individual dogs is more indicative of an animal's behavior than breed. He also testified that Rottweilers are not necessarily aggressive by their very nature. Thus, the evidence presented regarding the propensities of a Rottweiler dog, in the instant case, does not support a finding that Rottweilers are generally dangerous. Accordingly, *Hill*'s statement regarding the dangerousness of Rottweilers, which was specific to the evidence presented in that case, is not applicable to the instant case.

Ultimately, there is nothing in the record to suggest that defendant knew a *dangerous* dog was on the property. Rocky had no prior history of attacks, and neither the Covingtons nor Animal Control were aware of any complaints regarding the dog's aggression or viciousness. Defendant could not have known that Rocky was dangerous, as there was no evidence prior to 25 January 1996 that the dog exhibited vicious tendencies.

## IV. Conclusion

In the light most favorable to plaintiff, the evidence fails to show that defendant knew that Rocky had dangerous propensities prior to his attack on plaintiff. Since plaintiff has failed to establish that Rocky was a danger, he has failed to establish that defendant possessed "sufficient control to remove the danger

posed" under *Holcomb*. 358 N.C. at 508, 597 S.E.2d at 716. Plaintiff's assumption that defendant had knowledge of Rocky's dangerous propensities based upon breed is misplaced, as the record indicates that the Rottweiler breed is not inherently aggressive. As such, there is no genuine issue of material fact, and the trial court correctly granted defendant's motion for summary judgment. We affirm the order of the trial court.

Affirmed.

Judges ELMORE and STEPHENS concur.