IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-701

Filed: 7 April 2020

Johnston County, No. 18 CVS 718

RICKY CURLEE, a minor by and through his Guardian *ad litem* KARINA
BECERRA, individually, Plaintiff,

v.

JOHN C. JOHNSON, III, STACEY TALADO and RAYMOND CRAVEN, Defendants.

Appeal by plaintiffs from order entered 10 April 2019 by Judge Stephan R.

Futrell in Johnston County Superior Court. Heard in the Court of Appeals 5

February 2020.

> *Law Office of Michael D. Maurer, P.A., by Michael D. Maurer, and Burton Law*
> *Firm, PLLC, by Jason M. Burton, for plaintiff-appellants.*
>
> *Simpson Law, PLLC, by George Simpson, for defendant-appellee John C.*
> *Johnson.*

TYSON, Judge.

Ricky Curlee and his mother, Karina Becerra, ("Plaintiffs") appeal from an

order entered granting summary judgment in favor of John C. Johnson, III. We

affirm.

I. Background

In 2000, Johnson leased a single-family residential property located at 132

Gower Circle ("the Property") in Garner to Raymond Craven and Stacie Talado.

Following the expiration of the initial one-year lease term, Craven and Talado remained Johnson's tenants on a month-to-month basis. At the time of trial, Craven and Talado continued to maintain their tenancy at the Property with their minor children. Johnson collects the rental payment at the end of the driveway at the Property or at the Wal-Mart store where Talado acquires cashier's checks to pay the rent.

## A. Johnny

Craven and Talado owned a dog they had named "Johnny." Johnny was given to them as a puppy by a friend. Craven believed Johnny's sire was a black lab and his dam was "like a collie-looking kind of dog."

## B. 13 October 2014 Incident

Talado and Craven's children were playing with a neighbor's minor child, P.K. who is wholly unrelated to Plaintiffs, on 13 October 2014, when an incident occurred. P.K.'s mother had told her son not to play rough with Johnny, but she continued to allow P.K. and his sister to go over to and visit Craven and Talado's home with Johnny being present.

Talado described the incident: "[P.K.] was just playing with the dog, kind of wrestling with him, and [Johnny] nicked the top of his head." The "nick" occurred when P.K raised his head up while wrestling with Johnny. Talado described the "nick" as "about the size of my pinkie nail."

Chad Massengill, Johnston County's Animal Services ("JCAS") Director, affirmed the hospital did not document the incident in a report and the "nick" was minor. When investigating the October 2014 incident, Director Massengill classified Johnny's breed as a "Retriever, Labrador/Terrier, American Pit Bull." Director Massengill based this classification upon his visual identification.

Johnny was quarantined for ten days following the 13 October 2014 incident. JCAS determined Johnny did not satisfy the statutory definition of either a dangerous dog or even a potentially dangerous dog. No preventative measures of the Johnston County Ordinances relating to keeping animals were required of Talado and Craven. Johnny was returned to Talado and Craven following the expiration of the ten-day quarantine.

Director Massengill advised Talado and Craven of voluntary steps they could take to minimize the risks of keeping Johnny, including placing "Beware of Dog" signs on the property and keeping Johnny on a leash anytime children were around. Nothing in the record shows JCAS notified Johnson of this 2014 incident, as the owner of the property.

### C. 17 March 2015 Incident

Over six months later, seven-year-old Curlee visited the Property to play with Craven and Talado's children. Curlee lived on Gower Circle with his parents, Becerra

and Ricky Curlee, Sr. During his visit, Talado and Craven had restrained Johnny with a leash on the Property.

Curlee walked within the radius of the leash restraining Johnny while walking home. While inside the radius, Curlee pointed a toy gun at Johnny's head. Johnny bit Curlee on his cheek and tore the tissue off. Plaintiff's complaint alleges Curlee suffered severe and permanent facial disfigurement and psychological injuries as a result of the incident. JCAS responded to the incident, took possession of Johnny, and followed Craven and Talado's instructions to euthanize the dog.

## D. Procedural History

Plaintiffs initially sued Johnson only, and alleged negligence and strict liability on 5 July 2016. Following discovery, Johnson filed a Rule 56 motion for summary judgment under North Carolina Rules of Civil Procedure. Before this motion was heard, Plaintiffs voluntarily dismissed their complaint.

Ten days before the third anniversary of the incident, Plaintiffs re-filed their claims against Johnson and added Craven and Talado as co-defendants on 6 March 2018. Craven and Talado proceeded *pro se* and did not file answers to the complaint. Plaintiffs moved for and were granted an entry of default on 17 July 2018 solely against Craven and Talado.

Johnson denied liability, timely filed, and served his answer. Following discovery, Johnson filed his motion for summary judgment, which was granted by the trial court. Plaintiffs timely filed a notice of appeal.

## II. Jurisdiction

Plaintiffs concede their appeal is interlocutory, but assert without immediate appeal their substantial rights will be impacted. *See* N.C. Gen. Stat. § 7A-27(b)(3)(a) (2019). "Entry of judgment for fewer than all the defendants is not a final judgment and may not be appealed in the absence of certification pursuant to Rule 54(b) unless the entry of summary judgment affects a substantial right." *Camp v. Leonard*, 133 N.C. App. 554, 557, 515 S.E.2d 909, 912 (1999) (citations omitted).

> Our Supreme Court has held that a grant of summary judgment as to fewer than all of the defendants affects a substantial right when there is the possibility of inconsistent verdicts, stating that it is the plaintiff's right to have one jury decide whether the conduct of one, some, all or none of the defendants caused his injuries.

*Id.* (citations and internal quotation marks omitted).

This Court has held a substantial right is affected when "(1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dep't of Transportation v. Page*, 119 N.C. App. 730, 736, 460 S.E.2d 332, 335 (1995) (citations omitted). Here, the same factual issues apply to all claims against the property owner and the tenants. Two trials may bring about inconsistent verdicts relating to Plaintiff's damages. We conclude Plaintiffs assert a

substantial right to have the liability of all defendants be determined in one proceeding. *Id.*

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(3)(a) (2019). We address the merits of Plaintiff's interlocutory appeal.

## III. Issue

Plaintiffs argue the trial court erred in granting summary judgment for Johnson.

## IV. Summary Judgment

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to judgment as a matter of law." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation and internal quotation marks omitted); *see* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019).

On Defendant's motion for summary judgment in a negligence action:

> A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence

exist.

> Once the party seeking summary judgment makes the required showing, *the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.*

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (citations and quotation marks omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004) (emphasis supplied).

## B. Analysis

This Court recently stated: "Summary judgment is seldom appropriate in a negligence action. A trial court should only grant such a motion where the plaintiff's forecast of evidence fails to support an essential element of the claim." *Hamby v. Thurman Timber Company, LLC*, __ N.C. App. __, __, 818 S.E.2d 318, 323 (2018) (citation omitted). However, this "forecast of evidence" must still demonstrate "specific facts, as opposed to allegations, showing [Plaintiff] can at least establish a *prima facie* case at trial." *Id.*; *Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735.

In order to hold a landlord liable for injuries caused by a tenant's dog to a visitor, "a plaintiff must specifically establish both (1) that the landlord had knowledge that a tenant's dog posed a danger; and (2) that the landlord had control over the dangerous dog's presence on the property in order to be held liable for the

dog attacking a third party." *Stephens v. Covington*, 232 N.C. App. 497, 500, 754 S.E.2d 253, 255 (2014) (citations omitted).

The crux of this case is whether Johnson had prior knowledge Johnny posed a danger. Specifically, within this context, "posed a danger" is not a generalized or amorphous standard, but ties directly back to our common-law standard for liability in dog-attack cases: "that the landlord had knowledge of the dogs' previous attacks and dangerous propensities." *Id.*

This standard is consistent with the common-law standard applicable to the owner or keeper of the animal requiring prior knowledge of the animal's vicious propensity as an essential element in dog-bite cases to establish liability. "[T]he gravamen of the cause of action is not negligence, but rather the wrongful keeping of the animal with knowledge of its viciousness." *Holcomb v. Colonial Assoc., L.L.C.*, 358 N.C. 501, 511, 597 S.E.2d 710, 717 (2004) (alterations, citations, and quotation marks omitted).

Plaintiff argues the trial court erred in granting Johnson's motion for summary judgment, citing *Holcomb*, *supra* and *Stephens*, *supra*.

### 1. Holcomb v. Colonial Associates

In *Holcomb*, our Supreme Court examined "whether a landlord can be held liable for negligence when his tenant's dogs injure a third party." *Holcomb*, 358 N.C. at 503, 597 S.E.2d at 712. The landlord in *Holcomb*, was aware of two prior incidents

involving the tenant's Rottweiler breed dogs, yet continued to allow the tenants to keep the dogs on the property. *Id.* at 504, 597 S.E.2d at 712-13.

A lease provision allowed the landlord to have the tenant "remove any pet . . . within forty-eight hours of written notification from the landlord that the pet, in the landlord's sole judgment, creates a nuisance or disturbance or is, in the landlord's opinion, undesirable. *Id* at 503, S.E.2d at 712. Our Supreme Court stated the landlord with prior knowledge of multiple past attacks could be held liable because the express "lease provision [above] granted [the landlord] sufficient control to remove the danger posed by [the tenant]'s dogs. *Id.* at 508-09, 597 S.E.2d at 715.

### 2. *Stephens v. Covington*

In *Stephens v. Covington*, this Court applied rationale from *Holcomb* to a premises liability factual pattern that is analogous to the present case. *Stephens*, 232 N.C. App. at 500, 754 S.E.2d at 255. The landlord lived in the same neighborhood as the property and knew the tenants owned a Rottweiler dog. *Id.* at 498, 754 S.E.2d at 254. The landlord and the tenants spoke with animal control officers regarding safety measures for keeping a Rottweiler. *Id.*

The tenants created a fenced-in gate and posted "No Trespassing" and "Beware of Dog" signs on the property. *Id.* The incident occurred within the dog's fenced-in pen. *Id.* Even with the multiple signs posted, and the breed of the dog, this Court held the evidence failed to show the defendant knew or should have known the

Rottweiler had a dangerous propensity prior to the attack on the plaintiff. *Id.* at 501, 754 S.E.2d at 256. Johnson, unlike the defendant in *Stephens*, was not involved with the placing of the signs nor in arranging safety measures for Johnny.

### 3. *Plaintiffs' Proffer of Forecasted Evidence*

Plaintiffs contend direct and circumstantial evidence tends to show Johnson had prior knowledge of Johnny's alleged dangerous propensities. Plaintiff sent requests for admission of their prior knowledge of the dog's propensities to Talado, Craven, and Johnson. Craven failed to respond to the requests for admission. The items contained in the request for admission sent to Craven are admitted as against him by operation of law. *See* N.C. R. Civ. P. 36(a).

Talado responded *pro se* to Plaintiffs' request for admission, but not under oath or before a notary. Request for admission twelve provides: "Please admit that you informed your landlord, John Johnson III ("landlord"), of the attack, shortly after the attack." Talado responded with a handwritten "yes."

Plaintiffs contend their proffered evidence creates a genuine issue of fact of whether Johnson knew or should have known of this prior 2014 incident. Plaintiffs contend their proffer shows, at a minimum, a disputed issue of fact exists of whether Talado personally informed Johnson of the incident. Additionally, Plaintiffs claim their proffered expert testimony established, even if Johnson had not been informed of the incident, the appearance of the "Beware of the Dog" signs constituted "a

flashing red light to the landlord that they've got a potential problem there." Plaintiffs assert this imposed a duty upon Johnson to further investigate and inspect the premises to determine whether the dog posed a danger and take appropriate steps.

Taken in the light most favorable to the Plaintiffs and accepting the proffer as true, Plaintiffs' proffer fails to establish a genuine issue of material fact exists of whether Johnson knew or should have reasonably known of the October 2014 incident.

Plaintiffs' characterization of the prior October 2014 incident as an "attack" is not supported by the evidence in the record. To the contrary, the only evidence in the record is that the October 2014 incident occurred when another child was playing with the dog, and during the course of that play, the child picked his head up hitting the dog's mouth causing a "nick" on the child's head, resulting in a trip to the emergency room and a stitch. That incident does not raise a genuine issue of material fact of a "dog bite" to charge Johnson with prior notice.

Plaintiffs point to the JCAS case report that indicates it was for a "bite/exposure investigation" and the deposition testimony of Director Massengill, who had no independent recollection of the October 2014 incident, that the incident involved a "minor bite" because of the lack of any documentation concerning its severity.

From this, Plaintiffs contend a genuine issue of material fact exists of whether the prior incident should be classified as a dog-bite and/or attack sufficient to survive summary judgment. That characterization conflicts with the first-hand evidence of the October 2014 incident, and Plaintiffs offer no evidence to the contrary. JCAS investigated the incident and determined the dog was not dangerous or potentially dangerous.

To reach the conclusion advocated by Plaintiffs—that the October 2014 incident was "an attack" such that knowledge of it would have put Johnson on notice of the dog's dangerous propensity — would require speculation or conjecture that the October 2014 incident was not as described in the uncontradicted evidence. Such speculation or conjecture is insufficient as a matter of law to withstand summary judgment. *See Estate of Tipton v. Delta Sigma Phi*, ___ N.C. App. ___, ___ 826 S.E.2d 226, 233, *disc. rev. denied*, 372 N.C. 703, 831 S.E.2d 76 (2019) ("[I]t is well established that 'a plaintiff is required to offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, summary judgment is proper.'" (*citing Hamby*, ___ N.C. App. at ___, 818 S.E.2d at 323 (internal citation and internal quotation marks omitted)). Plaintiffs failed to forecast evidence that Johnson knew or should have known the dog posed a danger prior to the March 2015 incident.

Plaintiffs assert Talado's *pro se* unsworn answer to an ambiguous question of an "attack" imputes Johnson's prior knowledge of the 13 October 2014 incident. This admittingly "ambiguous" interrogatory where Talado entered a hand written "yes" does not differentiate between the 13 October 2014 or the 17 March 2015 incidents. This notion is contrary to law.

A co-defendant's nonresponses or admissions are not binding upon another co-defendant, even at the summary judgment stage. *Barclays American v. Haywood*, 65 N.C. App. 387, 389, 308 S.E.2d 921, 923 (1983) ("Facts admitted by one defendant are not binding on a co-defendant."). The language of *Barclays* applies not only to purported admissions of liability, but also to facts. *Id.* "Admissions in the answer of one defendant are not competent evidence against a [co-defendant]." *Cambridge Homes of N.C. Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 418, 670 S.E.2d 290, 299 (2008). During Talado and Craven's sworn depositions, both specifically denied informing Johnson of the earlier 13 October 2014 incident involving P.K.

Consistent with *Draughon*, this Court properly held: "If the moving party makes out a *prima facie* case that would entitle him to a directed verdict at trial, summary judgment will be granted unless the opposing party presents some competent evidence *that would be admissible at trial* and that shows that there is a

genuine issue as to a material fact." *Insurance Co. v. Bank,* 36 N.C. App. 18, 26, 244 S.E.2d 264, 268-69 (1978) (emphasis supplied) (citations omitted).

Under our precedents, a *pro se* and unsworn answer by a co-defendant to an ambiguous question in discovery, refuted at the sworn deposition, is not "competent evidence . . . [to show] . . . a genuine issue as to a material fact" of Johnson's prior knowledge. *Id.* The dissenting opinion purports to bolster the unsworn answer, as creating a factual issue, but fails to address its competency and admissibility under N.C. Gen. Stat. § 1A-1, Rule 56. "[M]aterial offered which set forth facts which would not be admissible in evidence should not be considered when passing on the motion for summary judgment." *Strickland v. Doe*, 156 N.C. App. 292, 295, 577 S.E.2d 124, 128 (2003) (citations omitted).

Additionally, the dissenting opinion improperly places the burden on the Defendants. *See Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735 ("the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial" (citation omitted)). Once Johnson showed Plaintiffs cannot introduce evidence of an essential element of their claim, Johnson's prior knowledge, the burden shifts to Plaintiffs to make a forecast of *prima facie* evidence. which shifts and relieves Defendant of any burden of production. *Id.*

Plaintiffs have not presented a genuine issue of material fact admissible at trial to satisfy the first prong of *Stephens* to prove "the landlord had knowledge that a tenant's dog posed a danger." *Stephens*, 232 N.C. App. at 500, 754 S.E.2d at 255. A review of the admissible evidence presented at the motion hearing and before this Court points merely to Johnson's knowledge that his tenants owned a dog, while they were staying on the Property. A refuted, unsworn, *pro se* and inadmissible statement does not create a genuine issue of material fact. Plaintiffs' argument is overruled.

The cases of *Barclays* and *Volkman* provide no support for one defendant's inadmissible assertion against another defendant to create any genuine issue of material fact. *Barclays*, 65 N.C. App. at 389, 308 S.E.2d at 923; *Volkman v. DP Associates*, 48 N.C. App. 155, 157, 268 S.E.2d 265, 267 (1980). This assertion not only misinterprets the controlling bright line principle articulated in *Barclays*, but also ignores the posture of *Volkman*. *Barclays* holds "[f]acts admitted by one defendant are not binding on a co-defendant." *Barclays*, 65 N.C. App. at 389, 308 S.E.2d at 923.

The facts in *Volkman* involved interrogatories sent to a plaintiff by a defendant and the defendant's subsequent answers being used to support a defendant's motion for summary judgment. *Volkman*, 48 N.C. App. at 155-56, 268 S.E.2d at 266. Alternative theories for establishing a partnership, overlooked by the trial court in the summary judgment award, provided a justification to reverse and remand that case on appeal. *Id.* at 157, 268 S.E.2d at 267.

The instant case involves unsworn and *pro se* answers by co-defendants triggering the rule from *Barclays*. Ignoring or overlooking this distinction and disregarding the legitimate use and admissibility of discovery, does not create genuine issues of material fact, nor compel a contrary result.

The bright-line rule from *Draughon*, *Barclays,* and *Insurance Co.* shows the correctness of the trial court's judgment. No case is cited to support the admission of this unsworn and refuted answer into evidence or to allow thi.s Court to deviate from *Barclays* and these precedents to reverse and remand.

Plaintiffs have not satisfied the first prong of *Stephens*. Plaintiffs' "forecast of evidence fails to support an essential element of the claim." *Hamby*, __ N.C. App. at __, 88 S.E.2d at 323. Summary judgment is proper. We do not need to address the remaining prong of *Stephens* or Plaintiffs' arguments of alleged "willful or wanton" conduct to award punitive damages.

## V. <u>Conclusion</u>

Plaintiffs' "forecast of evidence" does not establish a genuine issue of material fact exists of their alleged negligence claims against Johnson or present a *prima facie* case. *Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735. The trial court's summary judgment order is affirmed. *It is so ordered*.

AFFIRMED.

Judge HAMPSON concurs.

Judge BROOK dissents with separate opinion.

BROOK, Judge, dissenting.

I respectfully dissent.

The question raised on this appeal is not whether Plaintiffs proved that Defendant John Johnson ("Johnson") knew that Stacie Talada ("Talada") and Raymond Craven's ("Craven") dog posed a danger; Plaintiffs will bear that burden at trial. The question is whether, viewing the facts in the light most favorable to Plaintiffs, Johnson carried his burden of showing there was no genuine issue of material fact as to whether he knew the dog posed a danger. I would hold he has not and, as such, would reverse the trial court's entry of summary judgment for Johnson.

## I. Governing Law

A party moving for summary judgment has a hill to climb. First, summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019); *see also Volkman v. DP Associates*, 48 N.C. App. 155, 157, 268 S.E.2d 265, 267 (1980) (noting summary judgment improper where "[t]he answers to the [written discovery] indicate that there is at least a question as to" a disputed material fact). In evaluating such a motion, the evidence must be "viewed in the light most favorable to the non-moving party"—here, Plaintiffs. *Hardin v. KCS Int'l., Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009). Indeed,

"[e]ven the slightest doubt should be resolved in favor of the nonmovant.*" Volkman*, 48 N.C. App. at 157, 268 S.E.2d at 267.[1]

Beyond these generally applicable rules, the hill becomes steeper in circumstances such as these. "Summary judgment is seldom appropriate in a negligence action." *Hamby v. Thurman Timber Co., LLC*, ___ N.C. App. ___, ___, 818 S.E.2d 318, 323 (2018) (internal marks and citation omitted). Additionally, "[s]ummary judgment is rarely proper when a state of mind such as intent or knowledge is at issue." *Valdese Gen. Hosp., Inc. v. Burns*, 79 N.C. App. 163, 165, 339 S.E.2d 23, 25 (1986).

As articulated by the majority opinion, to succeed in a suit against a landlord for injuries caused by a tenant's dog to a third party, "a plaintiff must specifically establish both (1) that the landlord had knowledge that a tenant's dog posed a danger; and (2) that the landlord had control over the dangerous dog's presence on the property in order to be held liable for the dog attacking a third party." *Stephens v. Covington*, 232 N.C. App. 497, 500, 754 S.E.2d 253, 255 (2014). Again, Plaintiffs need not have proved each of these elements at this summary judgment stage—instead,

---

[1] The majority opinion notes that if the moving party shows entitlement to summary judgment, it "will be granted unless the opposing party presents some competent evidence that would be admissible at trial and that shows that there is a genuine issue as to a material fact." *Old S. Life Ins. Co. v. Bank of N.C., N.A.*, 36 N.C. App. 18, 26, 244 S.E.2d 264, 268-69 (1978). The next sentence in *Old* is equally pertinent here, however: "In addition, as is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged by means of a timely objection." *Id.*

Johnson must establish that they have not forecast evidence sufficient to create a genuine issue of material fact with regard to each element of the claim. Addressing each element pursuant to the applicable de novo standard of review, I would hold that Johnson has not met his burden of establishing there is no genuine issue of material fact.

## II. Application

### A. Knowledge of Dog's Dangerousness

Plaintiffs have not only alleged but presented evidence, through requests for admission and deposition testimony, that places Johnson's knowledge in dispute. I briefly review this evidence below.

Plaintiffs submitted requests for admissions to Talada and Craven. In response to these requests, Talada made certain handwritten admissions as follows:

> 9. Please admit that you owned a pit bull mix named Johnny which you kept on the property you leased . . .
>
> RESPONSE: never owned a pit bull
>
> 10. Please admit that this pit bull attacked ("the attack") and injured a child ("the child") on or about October 13, 2014 on the property.
>
> RESPONSE: never owned a pit bull
>
> 11. Please admit that the child bitten on your property required medical treatment following the attack.
>
> RESPONSE: yes

> 12. Please admit that you informed your landlord, John Johnson III ("landlord"), of the attack, shortly after the attack.
>
> RESPONSE: yes

(Emphasis added.) Craven did not respond; he is therefore deemed to have admitted each request by operation of law. *See* N.C. Gen. Stat. § 1A-1, Rule 36(a) (2019) ("The matter is admitted unless, within 30 days after service of the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection[.]"). Talada and Craven, in short, both admitted that they informed Johnson of the 13 October 2014 incident shortly after it occurred.

In addition to these admissions, Talada testified that Johnson would come to her house once a month to collect rent. Johnny would be in the yard during some of these visits. Both Craven and Talada testified at their depositions that they posted at least four "Beware of Dog" signs around their property after the October incident. Chad Massengill, Director of Johnston County Animal Services, testified at his deposition that such signs can be helpful in informing the public that a dog could be potentially dangerous. Plaintiffs' expert witness, Certified Property Manager Daryl Greenberg, testified that the appearance of such signs "is a flashing red light to the landlord that they've got a potential problem there . . . and that they have a duty to inspect and take additional steps under the area of safety." Johnson also admitted that he saw the signs and that he did not ask why they were posted when they had not been posted previously.

Considered as a whole and in the light most favorable to Plaintiffs, this evidence places Johnson's knowledge of the danger the dog posed at issue and meets the low bar of establishing a genuine issue of material fact. The narrative is easy enough to discern: Talada and Craven told Johnson about the 13 October 2014 incident involving Johnny biting another child, requiring that child to receive medical care; they further put up "Beware of Dog" signs on the property in response to this incident, a "flashing red light to the landlord that [he had] a potential problem"; Johnson saw these signs; and, in response to these developments, Johnson did nothing. Taken in the light most favorable to Plaintiffs, these facts are cleanly distinguishable from instances where our Court has found no genuine issue of material fact in this context and, as such, are sufficient to survive a motion for summary judgment. *See Stephens*, 232 N.C. App. at 501, 754 S.E.2d at 256 ("Defendant [landlord] could not have known that Rocky [the dog] was dangerous[.]").

The majority's response is to shade both the facts and law in favor of Defendant, which is inappropriate here given that he moved for summary judgment. I discuss three instances of such shading below.

First, the majority resolves ambiguities pertaining to the 13 October 2014 incident in favor of Defendant. Talada in her deposition testimony stated that the October incident between her dog and another child resulted in the child receiving "one or two stitches" from emergency medical personnel. Furthermore, the hospital

reported the incident as a "minor bite" to Johnston County Animal Services. In contrast, the majority opinion characterizes the record as follows: "the only evidence . . . is that the October 2014 incident occurred when another child was playing with the dog, and during the course of that play, the child picked his head up hitting the dog's mouth causing a 'nick' on the child's head, resulting in a trip to the emergency room and a stitch." *Curlee*, *supra* at ___. This interpretation of the record evidence resolves ambiguities in a manner helpful to Defendant. But, at this point in the proceeding, our mandate is clear: to view the record evidence in the light most favorable to the Plaintiffs as they seek to establish notice of dangerousness.[2]

Second, the majority interprets ostensibly ambiguous requests for admission in a manner disadvantageous to Plaintiffs.

As an initial matter, the majority is incorrect that Plaintiffs' requests for admission do not distinguish between the 13 October 2014 and the 17 March 2015 incidents. In fact, the requests for admission are not ambiguous in the least. The requests at issue, as noted above, proceed as follows:

> 10. Please admit that this pit bull attacked (***"the attack"***) and injured a child ("the child") ***on or about October 13, 2014*** on the property.

---

[2] The majority opinion further notes Johnston County Animal Services "determined Johnny did not satisfy the statutory definition of either a dangerous dog or even a potentially dangerous dog." *Curlee*, *supra* at ___. Left unsaid is that these statutory definitions did not factor into the inquiry in *Holcomb* or *Stephens* and that the definitions are quite exclusive, including only dogs who have killed or inflicted severe injury without provocation, "[i]nflicted a bite on a person that resulted in broken bones or disfiguring lacerations[,]" and the like. N.C. Gen. Stat. § 67-4.1 (2019).

RESPONSE: never owned a pit bull

11. Please admit that the child bitten on your property required medical treatment following **the attack**.

RESPONSE: yes

12. Please admit that you informed your landlord, John Johnson III ("landlord"), of **the attack**, shortly after the attack.

RESPONSE: yes

(Emphasis added.) The requests plainly utilize the parenthetical to define the 13 October 2014 incident as "the attack" and then refer back to that incident using that same language in the requests for admission that immediately follow. Even without guidance from the parenthetical, the most straightforward reading of the above is that requests 11 and 12 are referring to the event introduced in request 10. This straightforward interpretation is reinforced when reviewing the requests for admission as a whole. The 17 March 2015 "attack" is the only other "attack" referenced therein, and it is not introduced until request 17. And, when it is referenced, it is defined parenthetically as the "second attack[.]" Hence, it is clear that the "attack" referenced in requests 11 and 12 is that of 13 October 2014.

But even accepting request 12 as ambiguous does not support the grant of summary judgment. At this stage in the proceedings, "[e]ven the slightest doubt should be resolved in favor of the nonmovant." *Volkman*, 48 N.C. App. at 157, 268

S.E.2d at 267; *see also Warren v. Rosso and Mastracco, Inc.*, 78 N.C. App. 163, 164, 336 S.E.2d 699, 700 (1985) ("If different material conclusions can be drawn from the evidence, then summary judgment should be denied."). Accordingly, the affirmative responses from Talada and Craven to request 12 here must be interpreted as evidence that Johnson knew of the 13 October 2014 incident shortly after it occurred.

Finally, Johnson and the majority opinion also suggest that the admissions from Talada and Craven cannot raise a genuine issue of material fact. But the rules are clear: summary judgment is only appropriate where "pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019).

The majority opinion cites *Cambridge Homes of N.C. Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 670 S.E.2d 290 (2008), and *Barclays American Financial, Inc. v. Haywood*, 65 N.C. App. 387, 308 S.E.2d 921 (1983), as dooming Plaintiffs' appeal; however, a brief review indicates this is not so.[3] Both cases are cited, at bottom, for the proposition that "[f]acts admitted by one defendant are not binding on a co-defendant." *Cambridge*, 194 N.C. App. at 418, 670 S.E.2d at 299 (quoting *Barclays*, 65 N.C. App. at 389, 308 S.E.2d at 923). *Barclays* illustrates this central point well. There, the trial court granted plaintiff summary judgment against

---

[3] In addition to the below reason that these cases do not stand for the proposition asserted, *Cambridge* is inapposite here as it deals with a far different circumstance: whether to reverse the denial of a motion to dismiss for lack of personal jurisdiction. 194 N.C. App. at 419, 670 S.E.2d at 299.

one defendant based on another defendant's admission via failure to respond to requests for admission. *Barclays*, 65 N.C. App. at 389, 308 S.E.2d at 923. While this admission made summary judgment proper against the defendant who failed to respond, our court reversed the entry of summary judgment against the other defendant the plaintiff sought to bind. *Id.*

But just because one defendant's admission is not all powerful with the effect of resolving all issues as to another defendant does not mean it is inert. As in *Barclays* and *Volkman*, in the current controversy, "[t]he answers to the [written discovery] indicate[d] that there [wa]s at least a question as to" the key issue. 48 N.C. App. at 157, 268 S.E.2d at 267. And, here, as there, summary judgment is thus inappropriate.[4]

### B. Control Over Dog's Presence on the Property

I turn briefly to the second element Plaintiffs must ultimately prove: "that [Johnson] had control over the dangerous dog's presence on the property[.]" *Stephens*, 232 N.C. App. at 500, 754 S.E.2d at 255.

---

[4] The majority also argues these admissions were not properly considered at summary judgment because they were unsworn, an argument not made by Johnson at the trial court or before our Court. This argument has been waived because it was not raised below and, as such, is not properly before us. *See Thelen v. Thelen*, 53 N.C. App. 684, 689, 281 S.E.2d 737, 740 (1981). Further, assuming arguendo that the majority opinion is correct as to admissibility, "as is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged by means of a timely objection." *Old S. Life Ins. Co.*, 36 N.C. App. at 26, 244 S.E.2d at 269.

Our Supreme Court in *Holcomb v. Colonial Assocs.*, 358 N.C. 501, 597 S.E.2d 710 (2004), articulated the relevant inquiry as whether the landlord had "sufficient control to remove the danger posed by" a tenant's dog. *Id.* at 508-09, 597 S.E.2d at 715. The *Holcomb* Court found that the tenants' lease clearly granted the landlord the right to remove any pet undesirable to the landlord. *Id.* at 508-09, 597 S.E.2d at 715. The Supreme Court cited several cases from other jurisdictions for the proposition that a written lease provision does not provide the only manner by which a landlord can exercise control over a tenant's dog. *Id.* (*Uccello v. Laudenslayer*, 44 Cal. App.3d 504, 514, 118 Cal. Rptr. 741, 747 (1975) (holding the landowner had control via the power "to order his tenant to cease harboring the dog under pain of having the tenancy terminated"); *Shields v. Wagman*, 350 Md. 666, 684, 714 A.2d 881, 889-90 (1998) (holding the landowner could exercise control over his tenant's dog by refusing to renew a month-to-month lease agreement)).

Here, Johnson's deposition testimony indicated the following regarding the control he retains over his tenants' dogs:

> [JOHNSON]: My policy is if, it can't be a nuisance to any of the tenants or property owners, it can't destroy my property of course and be, you know, dangerous to anybody else in the area. What I do is if someone, if I get a phone call, generally it's from an adjoining one or someone close by saying hey, I have got a problem with so and so and so and so, this is the problem. I go to that tenant and I say okay, I have been notified there is a problem, this is what they have said. Let's just use an example of a nuisance, a dog, barking dog. ***If they can't stop the dog from***

10

**barking, they're going to have to move or get rid of the dog and I have had many people move.**

Q: Because of a barking dog?

[JOHNSON]: Because they can't figure it out. You figure it out. If you don't figure it out, I'll figure it out.

Q: So, you have the power to kick them out of there if they don't stick to your policy even with a barking dog?

[JOHNSON]: If that dog is a nuisance to other tenants and property owners, sure. Sure.

(Emphasis added.) He further testified that he has before exercised control over tenants' dogs by evicting tenants over an issue with an animal and that he has required tenants to get rid of dogs.

Accordingly, Johnson has not met his burden of establishing that no genuine issue of material fact exists regarding his control over Talada and Craven's dog.

### III. Conclusion

Were I a juror and defense counsel made the majority's arguments, I might well be persuaded. But we are not there yet. At this stage in the proceedings, the majority opinion steps beyond our limited role in a fashion at odds with our precedent's teaching that "[s]ummary judgment is an extremely drastic remedy that should be awarded only where the truth is quite clear." *Volkman*, 48 N.C. App. at 157, 268 S.E.2d at 267. Taking the facts in the light most favorable to Plaintiffs, as is our duty here, there is no such clarity as to the matter at issue: whether Johnson

11

knew the dog posed a danger.  I respectfully dissent and would reverse the entry of summary judgment.