IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-32

No. 238A20

Filed 16 April 2021

RICKY CURLEE, a minor, by and through his Guardian ad Litem, KARINA
BECERRA, and KARINA BECERRA, Individually

v.

JOHN C. JOHNSON, III, RAYMOND CRAVEN, and STACEY TALADO

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of
the Court of Appeals, 270 N.C. App. 657, 842 S.E.2d 604 (2020), affirming an order of
summary judgment entered on 10 April 2019 by Judge Stephan R. Futrell in Superior
Court, Johnston County. Heard in the Supreme Court on 16 February 2021.

*The Law Office of Michael D. Maurer, P.A., by Michael D. Maurer, and Burton
Law Firm, PLLC, by Jason Burton, for plaintiff-appellants.*

*Simpson Law, PLLC, by George L. Simpson, IV, and Denaa J. Griffin, for
defendant-appellee John C. Johnson, III.*

NEWBY, Chief Justice.

In this case we decide whether a landlord is liable for harm caused by his
tenants' dog. A landlord owes no duty of care to third parties harmed by a tenant's
animal unless, prior to the harm, the landlord (1) knew the animal posed a danger
and (2) retained sufficient control to remove the animal from the premises. The
landlord here had no knowledge that his tenants' dog posed a danger to visitors. As
such, he is not liable for plaintiff's injuries. The decision of the Court of Appeals is

affirmed.

¶ 2 Defendants Raymond Craven and Stacie Talada[1] (collectively, tenants) rented a single-family residential property from defendant John C. Johnson III (landlord). Tenants lived at the property with their children and their dog, Johnny. On 13 October 2014, a minor, P.K., visited the property to play with tenants' children. While all of the children were wrestling and playing with Johnny, the top of P.K.'s head collided with Johnny's mouth, causing "a little nick . . . about the size of [a] pinkie nail."

¶ 3 Chad Massengill, director of Johnston County Animal Services (JCAS), investigated the P.K. incident and characterized it as "a minor bite." Massengill concluded that Johnny did not satisfy the definition of either a "dangerous dog" or a "potentially dangerous dog" under N.C.G.S. § 67-4.1 (2019). Though not required by JCAS, tenants purchased three "Beware of Dog" signs and placed Johnny on a chain when children would come to play on the property.

¶ 4 Seven-year-old plaintiff Ricky Curlee Jr. lived with his parents, Karina Becerra and Ricky Curlee Sr., in a house near the end of tenants' driveway. On 17 March 2015, plaintiff visited the property to play with tenants' children. When it came time for plaintiff to return home, he walked inside the radius of Johnny's chain,

---

[1] Stacie Talada was incorrectly identified as "Stacey Talado" during the early stages of this matter, which is why her name appears incorrectly in the caption.

and Johnny bit plaintiff's face, causing severe injuries.

Plaintiff, by and through his guardian *ad litem*, Becerra, and Becerra, individually, filed a complaint against tenants and landlord to recover for plaintiff's injuries.[2] When tenants, proceeding *pro se*, failed to file answers to the complaint, the Johnston County Clerk of Court entered a default judgment against them.[3] Despite the entry of default, Talada[4] provided the following unsworn, handwritten answers to plaintiff's requests for admission (RFAs):

> 9.      Please admit that you owned a pit bull mix named Johnny which you kept on the property you leased at 132 Gower Circle ("the property").
>
> **RESPONSE:** never owned a pit bull
>
> 10.      Please admit that this pit bull attacked ("the attack") and injured a child ("the child") on or about October 13, 2014 on the property.
>
> **RESPONSE:** never owned a pit bull
>
> . . . .
>
> 12.      Please admit that you informed [landlord] of the attack, shortly after the attack.
>
> **RESPONSE:** yes

---

[2] Becerra is also a plaintiff in this action in addition to serving as Curlee Jr.'s guardian *ad litem*. For ease of reading, we refer to Curlee Jr. as "plaintiff."

[3] Tenants did not appeal.

[4] Craven failed to answer plaintiff's RFAs because he mistakenly believed Talada was responding on his behalf. Talada handwrote her responses directly onto the original RFA document that was served on 8 March 2018.

¶ 6        Talada, however, provided sworn testimony that refuted her unsworn, *pro se* answer in RFA 12. During Talada's deposition on 5 April 2017, landlord's counsel asked, "prior to [the 17 March 2015 bite], did you ever tell [landlord] about the incident with [P.K.]?" Talada responded, "[n]o, I did not." In another deposition on 7 August 2018, Talada stated "I never informed [landlord] of [the P.K. incident]." Further, all other relevant materials of record indicate that tenants did not inform landlord of the P.K. incident prior to the 17 March 2015 bite. In his deposition on 26 July 2018, Craven provided the following testimony:

> [LANDLORD'S COUNSEL:] When this incident occurred with [P.K.], did you call [landlord] and alert him to the situation?
>
> [CRAVEN:] No, I didn't.
>
> [LANDLORD'S COUNSEL:] Are you aware of whether or not anyone else notified [landlord] about this incident?
>
> [CRAVEN:] No, I'm not.

Landlord provided the following testimony during his deposition:

> [PLAINTIFF'S COUNSEL:] How did you come to learn about [the 17 March 2015 bite] from the get go?
>
> [LANDLORD:] I first learned there was an incident when I had been on vacation, I don't remember even where it was, I had gotten back and [Talada] had either texted me or called me and said she had the rent. This was sometime a week or two after the [17 March 2015 bite]. When I went to get the rent she said oh, by the way there was an incident, a dog bite, it has been taken care of. That was her exact words.

. . . .

[LANDLORD'S COUNSEL:] Were you aware at the time of the [17 March 2015] bite incident of any prior problems with any dogs owned by [tenants]?

. . . .

[LANDLORD:] There has never been an incident to my knowledge, anything.

Plaintiff's parents could not produce any evidence showing that landlord had been informed of the P.K. incident prior to the 17 March 2015 bite. Specifically, Becerra admitted that she did not have "any information or evidence to suggest [landlord] was notified by the sheriff or by Animal Control or by anybody else about the [P.K. incident]." Additionally, Curlee Sr. admitted that he had "no proof or evidence that [landlord] knew about the [P.K. incident]."

Landlord moved for summary judgment, arguing that he did not breach any duty owed to plaintiff. The trial court decided that there was no genuine issue of material fact and thus granted summary judgment in landlord's favor.

A divided panel of the Court of Appeals affirmed. *Curlee v. Johnson*, 270 N.C. App. 657, 666, 842 S.E.2d 604, 611 (2020). The Court of Appeals cited the following rule:

> In order to hold a landlord liable for injuries caused by a tenant's dog to a visitor, "a plaintiff must specifically establish both (1) that the landlord had knowledge that a tenant's dog posed a danger; and (2) that the landlord had control over the dangerous dog's presence on the property in order to be held liable for the dog attacking a third

party."

*Id.* at 661, 842 S.E.2d at 608 (quoting *Stephens v. Covington*, 232 N.C. App. 497, 500, 754 S.E.2d 253, 255 (2014) (citing *Holcomb v. Colonial Assocs., L.L.C.*, 358 N.C. 501, 504, 508, 597 S.E.2d 710, 712–13, 715 (2004))). The Court of Appeals reasoned that "within this context, 'posed a danger' is not a generalized or amorphous standard, but ties directly back to our common-law standard for liability in dog-attack cases: 'that the landlord had knowledge of the dogs' previous attacks and dangerous propensities.'" *Curlee*, 270 N.C. App. at 661, 842 S.E.2d at 608 (quoting *Stephens*, 232 N.C. App. at 500, 754 S.E.2d at 255 (citing *Holcomb*, 358 N.C. at 504, 597 S.E.2d at 712–13)). The Court of Appeals held

> [a] review of the admissible evidence presented at the motion hearing and before this Court points merely to [landlord's] knowledge that his tenants owned a dog, while they were staying on the [p]roperty. A refuted, unsworn, *pro se* and inadmissible statement does not create a genuine issue of material fact.

*Curlee*, 270 N.C. App. at 665, 842 S.E.2d at 610. As such, the Court of Appeals concluded that plaintiff failed to present "a genuine issue of material fact admissible at trial to satisfy the first prong of *Stephens* to prove 'the landlord had knowledge that a tenant's dog posed a danger.'" *Id.* (quoting *Stephens*, 232 N.C. App. at 500, 754 S.E.2d at 255).

¶ 10        The dissent, however, asserted that landlord would not be entitled to summary judgment because a genuine issue of material fact exists as to whether landlord knew

Johnny posed a danger. *Curlee*, 270 N.C. App. at 674, 842 S.E.2d at 615 (Brook, J., dissenting). In addition to addressing landlord's knowledge, the dissent would have reached the control element. Specifically, the dissent opined that "[landlord] has not met his burden of establishing that no genuine issue of material fact exists regarding his control over [tenants'] dog." *Id.* at 673, 842 S.E.2d at 615. Plaintiff appealed to this Court based upon the dissenting opinion at the Court of Appeals.

¶ 11    Summary judgment is proper if "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2019). "A genuine issue of material fact 'is one that can be maintained by substantial evidence.' " *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 335, 777 S.E.2d 272, 278 (2015) (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' and means 'more than a scintilla or a permissible inference.' " *Ussery*, 368 N.C. at 335, 777 S.E.2d at 278–79 (citation omitted) (quoting *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977)). "The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party." *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 482, 843 S.E.2d 72, 76 (2020). In a premises liability action, however, summary judgment for the defendant is proper when "the pleadings, affidavits, and other materials of record fail to establish

that [the defendant] owed [the] plaintiff a legal duty . . . ." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 67, 376 S.E.2d 425, 427 (1989).

¶ 12        To prevail on an ordinary negligence claim, a plaintiff must present sufficient evidence to prove

> (1) that there has been a failure to exercise proper care in the performance of some legal duty which [the] defendant owed to [the] plaintiff under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury.

*Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984). A landlord has no duty to protect third parties from harm caused by a tenant's animal unless, prior to the harm, the landlord (1) "had knowledge that a tenant's dog posed a danger," and (2) "had control over the dangerous dog's presence on the property in order to be held liable for the dog attacking a third party." *Stephens*, 232 N.C. App. at 500, 754 S.E.2d at 255 (citing *Holcomb*, 358 N.C. at 504, 508, 597 S.E.2d at 712–13, 715).

¶ 13        In *Holcomb* we considered "whether a landlord can be held liable for negligence when [a] tenant's dogs injure a third party." *Holcomb*, 358 N.C. at 503, 597 S.E.2d at 712. There the landlord knew of two prior incidents where a tenant's dogs injured third parties on the property. *Id.* at 504, 597 S.E.2d at 712–13. According to the relevant lease, the landlord had the authority to "remove any pet . . . within forty-eight hours of written notification from the landlord that the pet, in the landlord's

sole judgment, creates a nuisance or disturbance or is, in the landlord's opinion, undesirable." *Id.* at 503, 597 S.E.2d at 712 (alteration in original). The plaintiff argued the landlord

> failed to use ordinary care by failing to require the [tenant] to restrain his Rottweiler dogs, or remove them from the premises when [the landlord] knew, or in the exercise of reasonable care, should have known, *from the dogs' past conduct*, that they were likely, if not restrained, to do an act from which a reasonable person in the position of [the landlord] could foresee that an injury to the person of another would be likely to result.

*Id.* at 507, 597 S.E.2d at 715 (emphasis added). We held the landlord, who knew from the two prior attacks that the dogs posed a danger, could be liable for a subsequent dog-caused injury because he "retain[ed] control over [the] tenant's dogs" through a provision of the lease. *Id.* at 508–09, 597 S.E.2d at 715.

¶ 14      In *Stephens* the landlord knew his tenants were keeping a dog on the property. *Stephens*, 232 N.C. App. at 498, 754 S.E.2d at 254. As a precaution, the tenants kept the dog in a fenced area with "Beware of Dog" and "No Trespassing" signs posted. *Id.* The plaintiff, who was eight years old, visited the property to play with the tenants' children. *Id.* When the plaintiff entered the fenced area, the dog bit him on his leg and shoulder, leading to the plaintiff's suit. *Id.* Unlike the landlord in *Holcomb*, however, the landlord in *Stephens* had no knowledge of any prior attacks by the dog. *Id.* at 500, 754 S.E.2d at 255. The Court of Appeals stated:

> [P]ursuant to *Holcomb* and the cases cited therein, a

plaintiff must specifically establish both (1) that the landlord had knowledge that a tenant's dog posed a danger; and (2) that the landlord had control over the dangerous dog's presence on the property in order to be held liable for the dog attacking a third party.

*Id.* (citing *Holcomb*, 358 N.C. at 504, 508, 597 S.E.2d at 712–13, 715). Accordingly, the Court of Appeals held the trial court correctly granted the landlord's motion for summary judgment because "[i]n the light most favorable to [the] plaintiff, the evidence fail[ed] to show that [the landlord] knew that [the dog] had dangerous propensities prior to his attack on [the] plaintiff." *Stephens*, 232 N.C. App. at 501, 754 S.E.2d at 256.

¶ 15      The Court of Appeals' decision in *Stephens* provides an instructive framework for the present analysis. Like in *Stephens*, the question here is whether a genuine issue of material fact exists regarding landlord's prior knowledge of Johnny's alleged dangerous propensities. The record evidence clearly and consistently indicates that landlord had no prior knowledge of the P.K. incident. Tenants both provided sworn testimony that they never informed landlord of the P.K. incident; landlord testified that he had no prior knowledge of the P.K. incident; and plaintiff's parents admitted they had no proof that landlord was ever informed of the P.K. incident. Further, Talada's RFA 12 response and Craven's failure to answer the RFAs do not constitute admissible evidence against landlord to present a genuine issue of material fact. These "admissions" are hearsay, made by parties unrelated to landlord that meet no

exception to the hearsay rule. *See Rankin v. Food Lion*, 210 N.C. App. 213, 218, 706 S.E.2d 310, 314 (2011) ("Thus, '[h]earsay matters . . . should not be considered by a trial court in entertaining a party's motion for summary judgment.' " (alterations in original) (quoting *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 776 (1998))). Therefore, there is no genuine issue of material fact as to whether landlord had actual knowledge of the P.K. incident before the 17 March 2015 bite.

¶ 16    Moreover, we find unpersuasive plaintiff's argument that landlord should have known Johnny posed a danger based upon the "Beware of Dog" signs and chain in tenants' yard. To support this contention, plaintiff relies solely on the following deposition testimony from a property management expert, Daryl Greenberg:

> [A] landlord that sees a tenant sign that says "Beware of Dog" is a flashing red light to the landlord that they've got a potential problem there, a negligence problem, a risk problem of harm, and that they have a duty to inspect and take additional steps under the area of safety.

Plaintiff's theory, however, has no basis in our case law. Unlike the landlord in *Holcomb*, landlord here had no actual knowledge of any prior attacks by Johnny. Rather, like the landlord in *Stephens*, landlord only knew that his tenants kept a dog on the property and had taken the precautions of restraining the dog and posting "Beware of Dog" signs. Evidence of such precautions alone is not sufficient to give a reasonable landlord constructive notice that his tenant is harboring a dog with dangerous propensities. Landlord therefore had no reason to know Johnny posed a

danger. Because we hold that plaintiff has not forecast sufficient evidence to establish landlord's knowledge, we need not address the control element.

Landlord has met his burden of showing through discovery that plaintiff cannot produce substantial evidence to support an essential element of his claim—i.e., that landlord knew Johnny posed a danger before the 17 March 2015 bite. Thus, plaintiff has failed to show that a genuine issue of material fact exists for trial. As such, landlord is entitled to judgment as a matter of law. The Court of Appeals' decision affirming the trial court's grant of summary judgment is affirmed.

AFFIRMED.